756 P.2d 1075

STATE of Idaho, Plaintiff–Respondent,

v.

**John Hans BOEHNER,
Defendant–Appellant.**

No. 16345.

Court of Appeals of Idaho.

April 4, 1988.

Addendum On Denial of Rehearing
June 21, 1988.

Kootenai County Public Defender by Charles B. Lempesis and Anthony M. Sanchez (argued), Post Falls, for defendant-appellant.

Jim Jones, Atty. Gen. by David R. Minert, Deputy Atty. Gen., Boise, for plaintiff-respondent.

PER CURIAM.

John Boehner was convicted by a Kootenai County jury of assault with intent to commit a serious felony upon a law enforcement officer. The jury also convicted Boehner of using a firearm in connection with the assault. He received an indeterminate ten-year sentence for the principal offense, enhanced by an indeterminate three-year term for use of the firearm. On appeal, we are presented with three issues: (1) whether the trial court erred in allowing testimony that Boehner previously had expressed a desire to "kill a cop;" (2) whether the evidence was sufficient to support the verdict; and (3) whether the sentence was unduly harsh. For reasons explained below, we find the first issue to be dispositive. We vacate the judgment of conviction and remand the case for a new trial.

The essential facts are undisputed. One evening Boehner went to the home of a former friend and business associate. There he fired a gun several times at an unoccupied pickup truck. The Kootenai County Sheriff's office responded to a call reporting the incident. After examining the damage to the truck, the officers determined that a felony had been committed. See I.C. § 18–7001. The truck owner identified the perpetrator as John Boehner and gave the officers Boehner's home address. Several officers then were dispatched to that address. Believing that Boehner was armed and dangerous, the officers took up protected positions outside the house. Another officer went to a neighbor's home and telephoned the Boehner residence. He spoke to Boehner, asking him to come outside and discuss the earlier incident. A rapid sequence of events then took place. Boehner came out of the house and shot at one of the officers. The officers returned fire. Boehner was struck and wounded. Later, the assault charge was filed against Boehner. The prosecutor chose to allege not a general assault with intent to commit a serious felony, but more particularly, an assault with intent to commit a serious felony upon a law enforcement officer. The latter form of assault carries a heavier penalty. See I.C. §§ 18–909, –910 and –915.

As a result of this charging decision, a salient issue at trial was whether Boehner knew that the persons outside his home were law enforcement officers. Boehner testified that he did not know. He testified that he believed the truck owner and some friends had come to "get him." He also claimed that he acted in self-defense. Notwithstanding this testimony, the jury found Boehner guilty as charged. In so doing, the jury implicitly determined that Boehner had fired with the specific knowledge that

his intended target was a law enforcement officer. This appeal followed.

## I

We first discuss the admissibility of testimony about Boehner's alleged desire to "kill a cop." This testimony took two different forms and was presented at two different junctures of the trial. First, during the state's case-in-chief, the prosecutor called as witnesses five of the officers who had responded to the scene at Boehner's house. Each officer testified that he had heard a radio dispatch describing Boehner as "dangerous" and stating that Boehner had said he "wanted to kill a cop"—or words to that effect. Boehner subsequently took the stand and denied ever making such a threat. In rebuttal, the prosecutor presented the second form of testimony on this subject—a transcript of previous testimony given at the preliminary hearing by an acquaintance of Boehner. This witness, who evidently was unavailable at the time of trial, testified about a social drinking situation in which Boehner talked about a drug "bust" that had occurred "the previous year." In that conversation, according to the witness, Boehner said "he wished he would have had a loaded gun and he might've shot one cop." The witness also testified that this remark had been made "after three quarters of a bottle of whiskey," when Boehner was "pretty drunk."

Before we analyze the admissibility of each form of testimony, we note that the district court's rulings on evidentiary questions were made in a procedural context framed by pretrial events. Approximately two weeks before trial, defense counsel filed a motion in limine seeking to bar "any testimony by Kathy Bichov [the preliminary hearing witness] or any other witness as to statements made by the Defendant to or in the presence of such witness relative to the Defendant claiming he had or intended to shoot or kill cops." The wording of the motion in limine did not reach the ques-

tion later raised at trial about the officers' testimony concerning the radio report. The motion apparently focused on the preliminary hearing witness.[1]

The motion was not heard until the trial had been convened and voir dire had been conducted. Perhaps anticipating that the motion in limine would be denied, at least in part, defense counsel asked prospective jurors whether they would take seriously a remark, made under the influence of alcohol, about killing someone. In addition, the prosecutor and defense counsel asked some of the prospective jurors general questions about police responses to potentially dangerous situations.

When voir dire had been concluded and the jury had been selected, the court ruled on the motion in limine. Referring to the statement made to the preliminary hearing witness, the judge said:

> I think a statement such as that would have to be close enough in point of time and under circumstances that would indicate that it had evidentiary quality, and it may go to the weight rather than anything else, I suppose. I'm not going to rule out the admissibility if it can be shown to be relevant and provided a proper foundation is laid so I can intelligently make a ruling on it as far as its closeness in time, because I think it could be relevant to the issue of intent, state of mind. This is definitely a specific intent charge. I am at this point going to deny the Motion in limine.

In light of this ruling, the prosecutor gave his opening statement. In the course of his address to the jury, the prosecutor stated several times that Boehner had expressed a desire to "kill a cop."

## A

Against this background, we first examine the admissibility of the officers' testimony concerning the radio report. As mentioned above, five officers gave such

---

1. So far as the present record indicates, the source of the information broadcast over the police radio was not identified. The source may or may not have been the person who later testified at the preliminary hearing. According-

ly, for the purpose of our analysis, we will treat separately the testimony of the officers about the radio report and the testimony of the preliminary hearing witness.

testimony during the state's case-in-chief. When the first of these witnesses testified about hearing the dispatcher state that Boehner had said he "wanted to kill a cop," defense counsel promptly objected. Counsel argued that the testimony was inadmissible hearsay,[2] that it was unfairly prejudicial, and that it lacked proper foundation.

After a colloquy the judge ruled that any testimony concerning the radio report was not hearsay because it was not offered for the truth of the matter asserted. Rather, the judge said, it was offered for the limited purpose of showing what information the officers possessed and how this information "might bear on the subsequent actions of the officers." The jury was so instructed. The judge also overruled the objection to lack of foundation after further testimony was presented concerning police radio communication procedures. Although, the judge did not expressly address the claim of unfair prejudice, we presume that he considered and rejected it. As a result of these rulings, testimony by the officer then on the witness stand, and similar testimony by four other officers, was deemed admissible for the assertedly limited purpose of explaining the officers' actions during the night in question.

In our view, the judge erred in overruling the hearsay objection. As the judge implicitly acknowledged, the testimony would have been inadmissible under the hearsay exclusion rule if offered for the truth of the matter asserted—i.e., that Boehner actually had expressed a desire to "kill a cop." See I.R.E. 801, 802. No exception to the hearsay rule, under I.R.E. 803 or 804, was argued to the district court; nor has any such exception been identified on appeal. Accordingly, when the judge admitted the testimony, he ascribed to it another purpose—showing why the police acted as they did on the night in question.

It may be doubted that the jury grasped this distinction between purposes. But even assuming that they did, the question becomes whether the evidence was relevant in light of its ascribed purpose. We think it was not. Evidence is relevant only if it tends to prove or disprove "a fact of consequence to the determination of the action." I.R.E. 401. In this case, the facts of consequence during the state's case-in-chief were facts bearing on the elements of the offense charged. Among these elements, the prosecutor was required to prove Boehner's state of mind—that is, a specific intent to shoot a police officer. The prosecutor was not required to prove the officers' collective state of mind. Evidence of the motives for their actions on the night in question did not prove any element of the offense charged.[3]

---

2. No hearsay question would have arisen if the person to whom Boehner made the alleged statement—and from whom the statement eventually found its way to the police dispatcher—had testified. A statement made by Boehner to that person would be a party's statement, which is not hearsay under I.R.E. 801(d)(2). However, when that person relayed the statement to the police dispatcher, or perhaps to other persons in a string of intermediaries, the hearsay rule was triggered. Thus, the police officer's testimony was "hearsay within hearsay." This form of hearsay is admissible to prove the truth of the matter asserted only if each link in the chain of communications falls within an exception to the hearsay rule. I.R.E. 805; see generally, E. CLEARY, McCORMICK ON EVIDENCE § 324.3 (3d ed. 1984) (hereinafter cited as McCORMICK). Here, no exception to the hearsay rule appears applicable to the communication from the unidentified source to the dispatcher or from the dispatcher to the police officers.

3. In some circumstances a victim's state of mind may be relevant to proving an assault charge. An "assault" consists of "[a]n unlawful attempt, coupled with apparent ability, to commit a violent injury...." or of "[a]n intentional, unlawful threat by word or act to do violence ... coupled with an apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent." I.C. § 18-901. However, in this case no contention has been made, nor could a contention logically be made, that testimony about the radio report was relevant to establish the basis of a "well-founded fear." Such a fear must arise from an "act"—here, the discharge of the firearm—rather than from an alleged statement made on a prior occasion. Moreover, even if the radio report testimony were deemed relevant to prove that Boehner had induced a well-founded fear, such a use of the testimony would rely on the truth of the matter asserted—i.e., that Boehner actually had made a statement about "killing a cop." Thus, the hearsay problem which the trial judge attempted to avoid would be posed again.

In short, when offered during the prosecutor's case-in-chief, the testimony about the radio report was relevant only for the impermissible hearsay purpose. It was irrelevant if offered for the nonhearsay purpose. Therefore, the testimony was erroneously admitted.[4]

The next question is whether this error requires the conviction to be set aside. An error may be deemed harmless if it does not affect a substantial right of the accused. I.C.R. 52. The determination of whether a substantial right has been affected hinges on whether it appears from the record that the error contributed to the verdict. An error is harmless if, but only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *E.g., State v. LePage*, 102 Idaho 387, 630 P.2d 674 (1981).

Here, we cannot say, beyond a reasonable doubt, that the jury's verdict would have been the same absent the five officers' highly emphasized testimony concerning the radio report of Boehner's alleged statement that he "wanted to kill a cop." This evidence carried a manifest risk of improper use by the jury. Specifically, the jurors could have inferred that Boehner was predisposed to assault a police officer and that his actions on the night in question were the end result of this predisposition. Such an inference necessarily would have shed doubt on Boehner's claim that he fired with intent to defend himself against the truck owner and others, not with intent to harm a police officer.

Boehner's claim was hardly compelling, but neither was it facially frivolous. The officers, for apparent security reasons, had refrained from placing themselves in open view and from exhibiting indicia of their official status. Although an officer telephoned Boehner's home, identified himself as an officer and asked Boehner to step outside, Boehner later testified that he thought the telephone contact was a ruse by the truck owner. Indeed, there was evidence that Boehner's mother, who also occupied the house, called the police herself during the incident and expressed a fear of intruders on the property.

Nor can we say that the officers' testimony was mere surplusage in light of the transcribed testimony of the preliminary hearing witness, presented later at the trial. Even if the transcribed testimony was admissible—an issue to which we will turn in a moment—there are reasons to doubt its significance in comparison with the officers' testimony about the radio report. First, and most obvious, the transcribed testimony was a cold record of a statement by a single, absent witness. The radio report testimony was given "live," in repetitive and reinforcing sequence, by five officers in the courtroom. Second, the transcribed testimony referred to a casual conversation unrelated in time to the shooting incident. The officers' testimony referred to a radio report which was part of a drama unfolding the night when the charged offense was committed. Finally, as mentioned earlier, the preliminary hearing witness acknowledged that the remark she heard had been uttered while Boehner was intoxicated.

We conclude that the officers' testimony about the radio report may have made significant contribution, over and above the preliminary hearing testimony, to the

---

4. We need not, and do not, determine whether such testimony would have been admissible if given in response to questions on cross-examination, or to evidence presented by the defense, challenging the motives or certain actions of the police. In such an event, the testimony would have been relevant to rebut a defense challenge to the reasonableness of the officers' conduct after hearing the radio report. On that issue, generated by the defense, the testimony could have been received for its nonhearsay purpose. *Cf. Frank v. City of Caldwell,* 99 Idaho 498, 584 P.2d 643 (1978) (statement by out-of-court declarant received for nonhearsay purpose where reasonableness of officers' conduct was challenged in civil suit for personal injury allegedly caused by officers). However, the testimony still would have been subject to a balancing of its probative value for the ascribed purpose against its potential for unfair prejudice if the jury went beyond that purpose and considered it for the impermissible hearsay purpose. *See* I.R.E. 403. The task of balancing probative value against unfair prejudice is vested in the sound discretion of the trial judge.

jury's ultimate determination of the specific intent issue. Accordingly, we cannot say beyond a reasonable doubt that the jury's verdict was unaffected by the improperly admitted testimony. We hold that the error in admitting the radio report testimony was not harmless. The judgment of conviction must be vacated and the case remanded for a new trial.

## B

■ For guidance on remand, we now examine the admissibility of the testimony of the preliminary hearing witness. Because this witness was unavailable to testify at trial, the prosecutor, over objection, read portions of the witness's testimony into the record. As noted above, this testimony was offered in rebuttal after Boehner denied ever threatening to kill police officers. Boehner also had testified that he would not have fired at the person outside his home had he known that the person was a police officer. Boehner now asserts that the preliminary hearing testimony, like that concerning the radio report, was inadmissible because the danger of unfair prejudice outweighed its probative value.

However, the issues are not alike. As we have explained, the radio report testimony was hearsay—actually "hearsay within hearsay"—and was not subject to any exception to the hearsay exclusion rule. If considered for the postulated non-hearsay purpose, it was not relevant to matters at issue during the state's case-in-chief. Conversely, the risk that the testimony would be considered for the relevant but impermissible hearsay purpose was high. In contrast, the testimony of the preliminary hearing witness did not present these problems. Her testimony regarding Boehner's alleged statement in her pres-

ence was not hearsay at all. It was a party's statement under Rule 801(d)(2), I.R. E.[5] Consequently, it was admissible without limitation as to its purpose. There was no unfair prejudice attendant to considering her testimony for the truth of the matter asserted. The only prejudice was that arising from the legitimate, probative value of the testimony on the question of intent. Such prejudice is not "unfair" within the meaning of Rule 403.

However, this does not exhaust the Rule 403 question. Evidence also may be excluded under the rule if its probative value is exceeded by the danger of confusing the issues or misleading the jury. Boehner argues that the testimony harbored both of those risks because even if he did make the statement alleged by the witness, he did so while intoxicated at a time remote from the charged offense.[6] The trial judge made no explicit ruling on the application of Rule 403 to this testimony. On remand we instruct him to do so if the case is retried. The question is sufficiently close that we would hesitate, on the present record, to say that a ruling either to admit or to exclude would represent an abuse of discretion.

## II

As mentioned earlier, Boehner also questions the sufficiency of evidence to support the jury's verdict and he challenges the length of his sentence. Because we are vacating the judgment, we need not address these questions in detail. We simply note that even if the radio report testimony had been excluded, there was more than adequate evidence to take this case to a jury. Boehner would not have been entitled to a judgment of acquittal on the crime charged. Consequently, there is no constitutional impediment to a retrial. Moreover,

5. The *transcript* of the witness's testimony at the preliminary hearing might be regarded as hearsay. But if so, it appears to be covered by an exception for "former testimony" under Rule 804(b)(1). *See also State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981).

6. Remoteness relates not merely to the passage of time but also to the undermining of reasonable inferences due to the likelihood of super-

vening factors. McCORMICK § 185, at 542, n. 8. However, a lengthy passage of time will not automatically render evidence irrelevant. It depends on the nature of the evidence. *See, e.g., State v. Green*, 232 Kan. 116, 652 P.2d 697 (1982) (evidence that husband charged with murdering his wife had thrown a hatchet at her nearly a year before, held not too remote).

because a retrial and another sentencing proceeding could elicit new evidence as to the nature of the offense or as to Boehner's character, we decline to speculate about an appropriate sentence if he is reconvicted. It is sufficient to say that the ten-year indeterminate sentence, enhanced by a three-year indeterminate term for use of a firearm, would not have been excessive on the present record.

The judgment of conviction is vacated. The case is remanded for a new trial consistent with this opinion.

### ADDENDUM

*On Denial of Petition for Rehearing*

PER CURIAM.

This Court's lead opinion holds that the trial judge erred in allowing several police officers to repeat in court a radio dispatcher's statement that Boehner had said he wanted to "kill a cop." Our holding rests on a dual foundation. First, if offered for the truth of the matter asserted, the officers' testimony was inadmissible hearsay. Second, if offered not for the truth of the matter asserted, but merely to show the officers' state of mind, the evidence was irrelevant to any material issue during the prosecution's case-in-chief.

In a petition for rehearing, the state's attorney concedes that the testimony was inadmissible for the truth of the matter asserted. However, he continues to argue that the testimony was offered only to show the officers' state of mind. This mental state, the argument goes, was relevant to explain the officers' tactical decisions on how to confront Boehner at his home. In our view, the argument loses sight of the fundamental principle that evidence is relevant only if it relates to a material issue. As our lead opinion explains, the officers' tactical decisions did not constitute a material issue during the prosecution's case-in-chief.

As a general rule, each element of an alleged crime is a material issue. However, issues relating to possible defenses must be raised by the defendant before the state may introduce evidence concerning them. *See, e.g., United States v. Abbadessa,* 470 F.2d 1333 (10th Cir.1972). Here, the state contends that police tactics were placed at issue through defense counsel's questioning of prospective jurors on voir dire. This contention has scant support in the record. Defense counsel asked only a few, broadly worded questions with any arguable nexus to police conduct. The more pointed inquiries on this subject were made by the prosecutor. In any event, questions and remarks by counsel are not evidence. Voir dire is an opportunity for counsel to survey juror attitudes and to detect possible biases. This inexact process does not define the scope of material issues at trial.

In *United States v. Moschetta,* 673 F.2d 96 (5th Cir.1982), a federal appellate court drew a similar distinction between material issues and remarks by counsel. There, the defendant was charged with conspiring to receive and transfer automatic weapons in violation of the federal Gun Control Act of 1968. In his opening statement, prior to the government's case-in-chief, defense counsel told the jury that his client actually had been performing as a CIA agent when he bought and sold the weapons. During the government's case-in-chief, in apparent anticipation of this defense, the prosecutor introduced over objection the affidavit of a CIA staff attorney who averred that the agency's files contained no record that the defendant ever had worked there. The Fifth Circuit later ruled the evidence inadmissible for several reasons, one of which was explained as follows:

> The [affidavit] obviously was not relevant or material to any issue in the case as of the moment [it] was offered into evidence. It is true that Moschetta's counsel had mentioned in his opening statement that Moschetta would testify that he was a CIA agent, which meant that he could not have acted with the specific criminal intent in his dealings with ... the undercover ... agents. Counsel's statement, however, standing alone, did not put in issue for purposes of the government's case-in-chief the ques-

tion whether Moschetta was a CIA agent.

*Id.* at 101, n. 2.

The state has invited our attention to numerous other cases discussing the general topics of relevance and mental state. However, the cases cited do not analyze the precise question now before us. Perhaps the case closest on the facts is *State v. Collier*, 736 P.2d 231 (Utah 1987). There, the prosecutor presented testimony by a police officer that an anonymous informer told him the defendant had declared he "would not be taken alive." The Utah Supreme Court held this testimony to be outside the hearsay rule because it was admitted not to show that the defendant had made such a statement but to explain why the police established a secure stakeout near a place where the defendant was hiding. The court's opinion did not indicate whether the testimony was presented on rebuttal or during the prosecution's case-in-chief. Consequently, we cannot discern whether the opinion actually would support the state's position in the instant case. Moreover, on the critical question whether the testimony, given its nonhearsay purpose, was relevant to a material issue in the case, the Utah court offered no analysis. It said only that the officers' state of mind was relevant because the defendant once had called the police "pigs." This elusive rationale provides no guidance to us here.

The state next focuses on a suggestion in our lead opinion that the officers' "kill a cop" testimony could have been offered in rebuttal if and when the defense presented evidence raising an issue as to whether the police had acted properly.[*] The state now argues that "no prosecutor is guaranteed the opportunity to present rebuttal testimony.... [The prosecutor] was not required to sit on relevant testimony and risk losing it if the defendant chose not to present any

evidence." The argument is disingenuous. The state suffers no "loss" if rebuttal testimony becomes unnecessary because the defendant has presented nothing to rebut. The state cannot bootstrap rebuttal testimony into its case-in-chief by anticipating a defense and then characterizing the unmade defense as a material issue. If this does occur, the defendant is denied his right to choose whether, and how, to raise certain defenses. He may be forced to litigate, or to default on, an issue he would not otherwise have raised. Moreover, when rebuttal evidence is offered prematurely, the trial judge is not well situated to evaluate the probative value of the evidence on the unframed issue, or to weigh such value against any unfair prejudice.

Finally, the state suggests that our lead opinion contradicts itself by holding the officers' "kill a cop" testimony to be irrelevant while also holding it to be so prejudicial that the error could not be deemed harmless. The perceived contradiction is a result of the state's failure to distinguish between the hearsay and nonhearsay uses of the testimony. If used for the nonhearsay purpose ascribed to it by the district court, the testimony was irrelevant to a material issue during the prosecution's case-in-chief. If used to prove the matter asserted—that Boehner had expressed a desire to "kill a cop"—the testimony was highly relevant to a material issue but it also was inadmissible under the hearsay rule. To the extent the evidence was considered by the jury for an improper purpose, it was unfairly prejudicial.

Accordingly, the petition for rehearing is denied, and the case is remanded for a new trial.

---

[*] The state did, in fact, present other evidence during rebuttal that Boehner had expressed a willingness to kill a police officer. As discussed in our lead opinion, the state presented a transcript of testimony given at the preliminary hearing by a woman who claimed to have heard Boehner make such a remark. The sole challenge to that evidence in this appeal has been that its probative value was exceeded by unfair

prejudice. Our lead opinion rejects that challenge. However, the district court on remand should reconsider the admissibility of the transcript itself, as opposed to live testimony from the witness, in light of the Supreme Court's recent decision in *State v. Elisondo*, 114 Idaho 412, 757 P.2d 675 (1988), *overruling State v. Mee*, 102 Idaho 474, 632 P.2d 663 (1981).