IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38764

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 733 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 27, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| EUGENE VICTOROVICH AGAFONOV, | ) | THIS IS AN UNPUBLISHED |
| aka EUGENE YEUGENIY, | ) | OPINION AND SHALL NOT |
| | ) | BE CITED AS AUTHORITY |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Michael E. Wetherell, District Judge.

Judgment of conviction for possession of heroin and possession of paraphernalia, affirmed.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessisca M. Lorello, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Eugene Victorovich Agafonov, aka Eugene Yeugeniy appeals from his judgment of conviction for possession of heroin and possession of paraphernalia. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

On April 5, 2010, an officer responded to an emergency call regarding a possible overdose at a residence. Upon arrival, the officer was led inside by a resident to an upstairs bathroom, where Agafonov lay on the floor with shallow breathing, a rapid pulse, and a discolored face--deep red to purplish in color. The officer questioned an acquaintance of Agafonov regarding whether Agafonov had ingested drugs. The acquaintance stated he did not know. Paramedics and a second officer arrived at the scene. The paramedics moved Agafonov

1

from the bathroom, at which time the first officer began to search for clues regarding the cause of Agafonov's condition. Inside the bathroom, the officer discovered two syringes located in a cupboard drawer (one loaded and one empty), two charred metal spoons, a syringe cap and a used Q-Tip with what appeared to be blood in a garbage can, a belt, a tin with more Q-tips, a razor blade, and white residue. The liquid in the loaded syringe later tested positive for heroin.

During this period of time, the second officer and the paramedics each questioned the acquaintance regarding what could have caused Agafonov to become unresponsive. After speaking with the acquaintance, the second officer reported to paramedics and the first officer that Agafonov ingested opiates. Paramedics then administered Narcan, an opiate blocker used to treat overdoses. After paramedics administered the Narcan, Agafonov immediately became responsive. Paramedics then transported Agafonov to the hospital, where medical personnel attempted to obtain a blood sample. Agafonov refused, telling his sister, "I don't want them to draw my blood. Because if they want to prove anything, they won't be able to prove anything if they don't have my blood." Agafonov then departed the hospital against medical advice.

The state subsequently charged Agafonov with possession of heroin and possession of drug paraphernalia. The case went to trial, where the state called the acquaintance as a witness. Although the state had originally sought to use statements made by the acquaintance to the second officer regarding Agafonov's past practice of injecting opiates, it had decided not to pursue this due to its pretrial investigation, which indicated the acquaintance would no longer stand by those statements. On direct examination, the acquaintance testified that he discovered Agafonov unconscious on the bathroom floor and tried to revive him. He stated that, when the officers and paramedics arrived, he told them all the same thing when questioned about what happened, but they did not believe him. During cross-examination, Agafonov questioned the acquaintance regarding statements made to the second officer that were contained in his police report. The acquaintance denied making a number of statements contained therein.

Prior to redirect, the state requested a hearing outside the presence of the jury. The state argued that, because Agafonov used the police report in cross-examination, the state should be allowed to inquire into the rest of the report, including the portion regarding the acquaintance's statement that Agafonov had injected opiates in the past. Agafonov argued that the state was trying to impeach its own witness, that there was improper foundation for I.R.E. 404(b) evidence because the acquaintance was an unreliable source of the information, and I.R.E. 403 precluded

admission of the report. The district court ruled that the remaining portions of the report were admissible under I.R.E. 404(b); for impeachment and rehabilitation purposes; under I.R.E. 106--the doctrine of completeness; and as out-of-order rebuttal evidence. The state thereafter questioned the acquaintance regarding his prior statement to the second officer regarding Agafonov's past intravenous use of opiates, after which the district court gave a limiting instruction. The jury found Agafonov guilty of both counts. Agafonov appeals.

## II.

## STANDARD OF REVIEW

Agafonov contends the district court erred in allowing the statement about Agafonov's prior intravenous opiate use into evidence. Challenges to a trial court's decision to admit or exclude evidence are reviewed under the abuse of discretion standard. *State v. Zimmerman*, 121 Idaho 971, 974, 829 P.2d 861, 864 (1992). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine: (1) whether the lower court correctly perceived the issue as one of discretion; (2) whether the lower court acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) whether the lower court reached its decision by an exercise of reason. *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989). However, evidentiary rulings regarding relevancy are reviewed de novo. *State v. Gomez*, 137 Idaho 671, 674, 52 P.3d 315, 318 (2002).

## III.

## ANALYSIS

### A. Idaho Rule of Evidence 404(b)

Agafonov argues that the district court erred by admitting the statement by the acquaintance regarding prior intravenous drug use as I.R.E. 404(b) evidence. Idaho Rule of Evidence 404(b) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

3

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior. *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002).

In this case, the district court ruled that the evidence was admissible for the purpose of impeachment under Rule 404(b). However, in order for such evidence to be relevant for impeachment, it would be necessary for Agafonov first to deny ever injecting opiates in the past, which he did not do. Moreover, the state made clear at trial that it was not offering this evidence for Rule 404(b) purposes and does not argue in support of it on appeal. Therefore, we decline to consider this as one of the bases for admission of the statement.

**B.      Impeachment Evidence**

Agafonov argues that the district court erred by admitting the statements by the acquaintance regarding prior intravenous drug use by Agafonov as impeachment evidence. A witness's credibility can be impeached by any party, including the party which called the witness. I.R.E. 607. Idaho Rule of Evidence 613 allows the use of prior inconsistent statements to impeach a witness. Evidence introduced under this rule must be relevant for the proper purpose of impeachment. *State v. Wood,* 126 Idaho 241, 249, 880 P.2d 771, 779 (1994). Agafonov argues that the questioning regarding prior opiate use was not relevant to the ultimate issue at trial and inquiry into that topic did not serve the goals of impeachment. Agafonov asserts the state was improperly attempting to bootstrap into evidence otherwise inadmissible testimony.

Idaho Rule of Evidence 401 defines relevant evidence as any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Rule 402 states the general rule that all relevant evidence is admissible. To determine whether the state examined the acquaintance for the primary purpose of impeaching him before the jury with otherwise inadmissible substantive evidence, we review the evidence presented at trial rather than any subsequent explanation of the state's reason or motive for calling the acquaintance to testify. *See State v. Hoover*, 138 Idaho 414, 420, 64 P.3d 340, 346 (Ct. App. 2003).

4

On cross-examination, Agafonov asked the acquaintance a number of questions with respect to the police report. Specifically, Agafonov asked the following:

> Q.    Did you tell [the officer] that [Agafonov] asked you to come over so you could smoke a cigarette and [Agafonov] could show you a website?
> . . . .
> Q.    Did you tell [the officer] that you hadn't seen [Agafonov] lately because you took a trip to Portland and you were short on cash?
> . . . .
> Q.    Did you remember telling [the officer] that that night [Agafonov] had given you $100 because you were short on cash?
> . . . .
> Q.    Do you remember telling [the officer] that [Agafonov] went into the bathroom and you heard a loud noise?

In response, the acquaintance denied making these statements and testified to a different sequence of events that night. Agafonov later asked: "And so all this information that [the officer] put in his report, those are not things that you said." The acquaintance responded, "No." The state then questioned the acquaintance on the same topics that Agafonov had inquired into. This portion of the record indicates that the state offered the officer's report for impeachment purposes. The district court specifically found this to be a permissible basis for admission of the statements in the police report. We agree that such questions by the state were relevant because they tended to make it more or less probable that the acquaintance was testifying truthfully.

However, the state also inquired into the acquaintance's statements regarding Agafonov's prior intravenous use of opiates. These questions had no permissible relevant purpose and were not proper for impeachment of the witness because the witness had not testified to anything contrary on the subject. Indeed, the topic of Agafonov's prior drug use had not been addressed in evidence in any manner prior to the questioning by the state. Therefore, the questions regarding Agafonov's previous intravenous drug use were not relevant for impeachment purposes under I.R.E. 607, and the district court abused its discretion in admitting them on that basis.

## C.    Rehabilitation Evidence

Agafonov argues the district court erred by admitting the statements by the acquaintance regarding prior intravenous drug use by Agafonov as evidence rehabilitating the credibility of the acquaintance. Prior consistent statements may be offered to show that the witness did not recently fabricate testimony. *State v. Howard,* 135 Idaho 727, 732, 24 P.3d 44, 49 (2001).

5

Under I.R.E. 801(d)(1)(B), a prior consistent statement is not considered hearsay because the statement is not being offered to prove the truth of the matter asserted but, rather, to show the credibility of the witness. *Howard*, 135 Idaho at 732, 24 P.3d at 49. Agafonov argues that the statement here does not qualify as rehabilitation evidence because there was no allegation that the acquaintance had fabricated any testimony. Agafonov also argues that the topics covered in rehabilitation must be limited to what he inquired to on cross-examination. Specifically, Agafonov contends cross-examination was limited to three specific items--the acquaintance did not go to Agafonov's house to smoke cigarettes, the acquaintance did not say he had just returned from Portland, and Agafonov had given the acquaintance $100 because the acquaintance was short on cash.

Agafonov is correct that there must first be a charge that the acquaintance fabricated testimony and that the evidence must be limited to the topics previously addressed in testimony on cross-examination. Here, when using the police report on cross-examination, Agafonov asked narrow questions. Agafonov then asked the following question: "And so all this information that [the officer] put in his report, those are not things that you said." While this question appears to be broad, when viewed in context--following the previous specific questions--it demonstrates that Agafonov was challenging the acquaintance's testimony on those specific points. Once again, the state's redirect which was limited to those same questions was proper for rehabilitation of the acquaintance. However, when the state went beyond those questions and referenced Agafonov's prior intravenous drug use, there was no rehabilitative value. The acquaintance had not testified as to that topic in any capacity. Therefore, the questions regarding Agafonov's previous intravenous drug use had no rehabilitative purpose, and the district court erred in admitting them on that basis.

## D.  Doctrine of Completeness

Agafonov argues the district court erred by admitting the statements by the acquaintance regarding prior intravenous drug use by Agafonov under I.R.E. 106--the doctrine of completeness. Under I.R.E. 106, when a "writing or recorded statement or part thereof is introduced by a party, an adverse party may require that party at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it." While wholesale admission of the entire document is generally inappropriate, those portions which explain, qualify, or are otherwise relevant are admissible.

6

*See State v. Fain*, 116 Idaho 82, 86, 774 P.2d 252, 256 (1989). Agafonov argues that the admitted testimony regarding prior intravenous drug use did not serve to explain, place in context, avoid misleading the jury, or ensure a fair understanding of the conversation between the second officer and the acquaintance. We agree. While the redirect which was limited to the same questions that Agafonov covered in his cross-examination of the acquaintance was proper under I.R.E. 106, the police report did not become admissible in its entirety. The statement regarding Agafonov's prior intravenous drug use in no way served to explain or place in context the previous questions asked by Agafonov. The purpose of the doctrine of completeness is to keep one party from unfairly using portions of a document out of context. In this case, the police report was not used in a manner which would warrant allowing its wholesale admission. Thus, the district court erred in admitting those statements under I.R.E. 106.

**E.      Rebuttal Evidence**

Last, Agafonov argues the district court erred by admitting the statements by the acquaintance regarding prior intravenous drug use by Agafonov as out-of-order rebuttal evidence. Rebuttal evidence is evidence which explains, repels, counteracts, or disproves evidence which has been introduced by or on behalf of the adverse party. *State v. Olson,* 103 Idaho 278, 281, 647 P.2d 734, 737 (1982). Trial courts are given wide latitude with respect to rebuttal evidence, and "[e]ven where evidence admitted in rebuttal is not strictly rebuttal in nature, its admission or exclusion rests in the sound discretion of the trial court, provided that the party against whom such evidence is admitted has the opportunity to meet the evidence." *Id.* at 282, 647 P.2d at 738. Agafonov argues that, because the testimony was presented before Agafonov had offered any testimony in his case and had only made an opening statement, the district court abused its discretion by allowing the testimony. While Idaho has not squarely addressed this issue, it addressed a similar issue in *State v. Boehner*, 114 Idaho 311, 317, 756 P.2d 1075, 1081 (Ct. App. 1988). In that case, the defendant referenced a certain matter during voir dire, and the state thereafter sought to introduce rebuttal evidence in its case in chief. There, we stated:

> The state cannot bootstrap rebuttal testimony into its case-in-chief by anticipating a defense and then characterizing the unmade defense as a material issue. If this does occur, the defendant is denied his right to choose whether, and how, to raise certain defenses. He may be forced to litigate, or to default on, an issue he would not otherwise have raised. Moreover, when rebuttal evidence is offered prematurely, the trial judge is not well situated to evaluate the probative value of

the evidence on the unframed issue, or to weigh such value against any unfair prejudice.

*Id.* at 318, 756 P.2d at 1082. While other jurisdictions are split on whether an opening statement opens the door to rebuttal evidence presented in a prosecution's case in chief, it appears that most courts which have addressed this issue have held it does not.[1] *Boehner* appears to accord with the majority of courts which have addressed this issue, and we hold that statements during opening argument by the defendant do not open the door to rebuttal evidence by the prosecution during its case in chief. Therefore, the district court erred by allowing the acquaintance to testify to the matters in the police report as out-of-order rebuttal evidence.

## F.      Harmless Error

The state argues that, even if the district court erred by admitting the statements by the acquaintance regarding prior intravenous drug use of Agafonov, such error was harmless. Under the harmless error doctrine, error in the admission or exclusion of evidence will not result in a reversal if the error was harmless beyond a reasonable doubt. *State v. Field*, 144 Idaho 559, 572, 165 P.3d 273, 286 (2007). Thus, erroneous admission of evidence will not be grounds for reversal on appeal if, absent that evidence, the result of the proceeding would have been the same. *State v. Hall*, 111 Idaho 827, 832, 727 P.2d 1255, 1260 (Ct. App. 1986).

---

[1]      *Compare United States v. McGuire*, 808 F.2d 694, 696 (8th Cir. 1987) (holding the trial court erred in allowing the government to put on rebuttal evidence in anticipation of a defense set forth in opening argument), *United States v. Basic Const. Co.*, 711 F.2d 570, 574 (4th Cir. 1983) (stating that allowing evidence to rebut a defendant's opening argument should be discouraged and "rebuttal evidence ordinarily should not be permitted for that purpose during the government's case in chief"), *United States v. Tomaiolo*, 249 F.2d 683, 689 (2d Cir. 1957) (opening statement by defendant is not evidence and does not call for rebuttal evidence), *Burns v. State*, 609 So. 2d 600, 605 (Fla. 1992) (stating that remarks made by the defendant in opening argument do not open the door for rebuttal testimony by a state's witness where the matter has not been put in issue by the evidence at trial), *State v. Donovan*, 698 A.2d 1045, 1048 (Me. 1997) (holding the defendant's opening statement could not open the door for rebuttal evidence), *State v. Anastasia*, 813 A.2d 601, 606 (N.J. Sup. Ct. App. Div. 2003) (stating that opening arguments are not evidence and cannot be met with rebuttal evidence), *and State v. Richards*, 438 S.E.2d 331, 335 (W. Va. 1993) (stating that rebuttal evidence can only be introduced to rebut evidence previously introduced and that the mention of character issues during opening argument does not open the door to the introduction of otherwise inadmissible character evidence on rebuttal), *with Johnson v. State*, 969 A.2d 262, 274-75 (Md. 2009) (acknowledging rule that the state can introduce evidence to rehabilitate or rebut a witnesses testimony if the defense has opened the door during opening argument), *and Bass v. State*, 270 S.W.3d 557, 563 (Tex. Crim. App. 2008) (stating that a defendant's opening argument opens the door to rebuttal evidence by prosecution).

8

Extensive and convincing evidence was presented at trial to demonstrate that Agafonov possessed heroin and paraphernalia. Agafonov admitted to having a drug habit involving opiates. Agafonov admitted to the possession of the drug paraphernalia (except for the syringes). Agafonov's sister testified regarding an incriminating statement made by Agafonov at the hospital showing consciousness of guilt. The bathroom where the heroin and paraphernalia was found belonged to Agafonov. Finally, the district court gave a limiting instruction directing the jury to consider the acquaintance's statement only for the purpose of assessing the believability of the acquaintance's testimony. It is presumed that the jury followed the district court's instructions. *See State v. Kilby,* 130 Idaho 747, 751, 947 P.2d 420, 424 (Ct. App. 1997). We therefore conclude beyond a reasonable doubt that the inclusion of evidence of Agafonov's past intravenous opiate use did not contribute to the jury's guilty verdict.

## III.

## CONCLUSION

Given the overwhelming evidence against Agafonov, coupled with the district court's limiting instruction, any potential error in admission of testimony was harmless beyond a reasonable doubt. Accordingly, Agafonov's judgment of conviction for possession of heroin and possession of paraphernalia is affirmed.

Judge GUTIERREZ, **CONCURS.**

Chief Judge GRATTON, **CONCURS IN THE RESULT.**