797 P.2d 139

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Jerry R. BRAZZELL,**
**Defendant–Appellant.**

**No. 17646.**

Court of Appeals of Idaho.

July 19, 1990.

Petition for Review Denied
Sept. 27, 1990.

Alan E. Trimming, Ada County Public Defender, August H. Cahill, Jr., Chief Deputy (argued), Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.*

Jerry Brazzell was convicted by an Ada County jury of second degree murder in the shooting death of Tony Kline. Brazzell received a life sentence, with a ten-year minimum period of confinement. On appeal, he has raised issues related to trial procedure, evidence and sentencing. First, he argues that the trial judge erred in admitting evidence relating to his prior drug activity. Second, he contends that his attorney's cross-examination of prosecution witnesses was improperly limited. Third, he contends that the jury was improperly influenced. Fourth, he contends that he should have been granted a new trial because of newly discovered evidence. Fifth and finally, he asserts that his sentence was excessive. For reasons explained below, we affirm the judgment of conviction and the sentence.[1]

---

* This opinion prepared by BURNETT, J., and voted on by the Court prior to his resignation July 16, 1990.

1. After this appeal was briefed and argued, a new attorney contacted the clerk of the Court, stating that he intended to raise additional issues regarding ineffective assistance of trial counsel and denial of a speedy trial. The speedy trial issue actually appears to be a subset of the ineffective assistance issue because it is premised upon an argument that defense counsel sought and obtained unnecessary continuances. Ineffective assistance is an issue rarely appropriate to a direct appeal from a judgment of conviction; it is usually reserved to post-conviction relief proceedings, where a fuller record can be developed. *State v. Koch*, 116 Idaho 571, 777 P.2d 1244 (Ct.App.1989). Consequently, we

The record depicts the following course of events which led to Brazzell's conviction and sentencing. In the spring of 1987, a dispute arose between Brazzell and an acquaintance, Tony Kline, over numerous matters including ownership of a generator. Each visited the other, leaving threatening notes. During the evening of June 22, 1987, Brazzell and two other men drove to meet Kline. The purpose of this visit is in dispute, but it appears that Brazzell wanted to retrieve personal goods he believed Kline to be holding. One of the other men, Mike Williams, owed money to Kline and knew where he was staying. The men brought a shotgun and a .38 derringer with them because, Brazzell later said, they considered Kline to be dangerous. Upon their entry to the apartment, an altercation ensued. Kline was shot by Brazzell with the shotgun and perhaps by Williams with the derringer. The third man, Robert Waid, did not shoot Kline. All three men were eventually arrested.

The defendants were appointed counsel and the case was set for preliminary hearing. Charges against Waid were dropped in exchange for his agreement to testify. Brazzell and Williams were bound over to district court, where the cases were severed. The state sought a conviction against Brazzell for murder in the first degree. His case came to trial before the Williams case. Williams testified against him. A salient issue at trial was whether Brazzell had planned to kill Kline. Brazzell testified that he was set up by Kline and Williams, and that he killed Kline in self-defense. Notwithstanding this testimony, the jury found Brazzell guilty of murder in the second degree. This appeal followed.

## I

■ We first discuss the admissibility of evidence about Brazzell's prior drug use. During the prosecution's case-in-chief, Williams testified that at their first meeting, Brazzell said he could get rid of a lot of drugs. Brazzell asserts that this testimony was irrelevant to the crime charged and was unfairly prejudicial. Evidence of

prior bad acts may be admitted if it satisfies a two-part test. The first inquiry is whether the evidence is relevant to a material and disputed issue concerning the crime charged. *State v. Greensweig*, 102 Idaho 794, 641 P.2d 340 (Ct.App.1982). The second inquiry involves a determination of whether the probative value of the evidence is outweighed by unfair prejudice to the defendant. *State v. Stoddard*, 105 Idaho 533, 670 P.2d 1318 (Ct.App.1983) (review denied). In this case, we conclude that the testimony about Brazzell's prior bad acts should not have been admitted, but the admission was harmless error.

■ Turning to the first inquiry, evidence is relevant only if it tends to prove or disprove "a fact of consequence to the determination of the action." I.R.E. 401. In this case, the facts of consequence during the state's case-in-chief were facts bearing on the elements of the offense charged. In Idaho, the elements of the crime of murder in the first degree include: (a) an unlawful killing; (b) the wilful, deliberate and premeditated nature of the killing; (c) the intent to kill; and (d) malice. *See* I.C. § 18-4003. Among these elements, the prosecutor was required to prove Brazzell's state of mind—that is, a specific intent to kill Kline. The state contends that the drug evidence was relevant because it contradicted Brazzell's testimony that he had few prior contacts with Williams and because it showed a drug-related motive for killing Kline.

■ We are not persuaded. First, we note that the state's evidence about Brazzell's and Williams' alleged drug activity was presented in the prosecution's case-in-chief, in apparent anticipation of Brazzell's possible testimony. This was error. As we recently explained, issues other than elements of the offense charged must be raised by the defendant before the state may introduce evidence concerning them. *State v. Boehner*, 114 Idaho 311, 317, 756 P.2d 1075, 1081 (Ct.App.1988). When Williams testified about drug dealings with Brazzell, his testimony was not relevant to

will not address in this opinion any of the additional issues raised by the new attorney.

any element of the charged offense. We also note that this evidence lacked probative value on the charge of murder. Viewed in best light, what the prosecution was attempting here was to show that the uncharged bad acts—drug dealing—provided the real motive for Brazzell's killing of Kline. However, the prosecution offered no proof of this conduct beyond the testimony of Williams. There was no evidence of any transactions involving drugs between Kline and Brazzell. Consequently, the jury could do no more than speculate that Kline had dealt in drugs with Brazzell. Moreover, the evidence was unfairly prejudicial, casting Brazzell in the role of a drug dealer. We believe the trial court erred in admitting Williams' testimony on drug activity.

■■■ The next question is whether this error requires the conviction to be set aside. An error may be deemed harmless if it does not affect a substantial right of the accused. I.C.R. 52. The determination of whether a substantial right has been affected hinges on whether it appears from the record that the error contributed to the verdict. An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error. *State v. Boehner*, 114 Idaho at 315, 756 P.2d at 1079. Here, we believe the jury's verdict would have been the same absent the testimony about Brazzell's prior bad acts. The fact of the shooting and the fact that Brazzell twice had fired the shotgun at an unarmed Kline were undisputed. Given the record before us and presented to the jury, Brazzell's contention that he shot Kline in self-defense and therefore deserved an acquittal is plainly untenable. The jury rejected the state's first degree murder allegation and returned a verdict of second degree murder, which was consistent with the evidence showing an unplanned homicide. We hold that admission of the drug testimony did not contribute to the conviction on this lesser included offense.

## II

Brazzell's second contention is that his right to a fair trial was jeopardized by the way the trial court limited his cross-examination and handled his objections to the evidentiary issue mentioned above. In particular, he complains that he was not allowed to question Mike Williams sufficiently about a possible plea agreement made in exchange for his testimony against Brazzell. He also urges that the court should have removed the jury so that he could argue to the court his evidentiary objections without having the damaging testimony exposed to the jury. We will examine each contention in turn.

■■■ Cross-examination is a means of testing the accuracy of adverse testimony. It is a key factor in the integrity of the fact-finding process. *See Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L.Ed.2d 297 (1973). In this case, Brazzell has claimed an infringement of this process but has not shown precisely where the trial court acted improperly. Control of cross-examination is committed to the sound discretion of the trial court. *State v. Pierce*, 107 Idaho 96, 685 P.2d 837 (Ct.App.1984) (review denied). The record reveals that Williams was cross-examined extensively about whether he had a plea agreement with the state in exchange for his testimony. The court stopped the questioning only when Brazzell's counsel asked what Williams knew of plea agreements which had occurred in other local criminal trials. This refusal to allow questioning about Williams' knowledge of unrelated plea agreements was not an abuse of discretion.

■■■ We now turn to Brazzell's assertion that the trial court mishandled his objections to Williams' testimony. Courts routinely allow hearings on evidentiary matters outside the presence of the jury. *See, e.g., State v. Barlow*, 113 Idaho 573, 746 P.2d 1032 (Ct.App.1987). However, the order of trial and the decision to grant hearings during the trial are at the trial court's discretion. *See, e.g., State v. Silva*, 106 Idaho 14, 674 P.2d 443 (1983); *State v. Johnson*, 92 Idaho 533, 447 P.2d 10 (1968).

Our examination of the record before us reveals that Brazzell was allowed to preserve his objections for review, as I.R.E. 103 requires. There were several colloquies with the court in which the relevancy and materiality objections were discussed outside the jury's presence. However, the court told counsel that it did not wish to disrupt the trial by continually removing the jury for argument on objections unless it was "absolutely necessary." It is clear from the record that the court understood the bases for Brazzell's many objections. Therefore, we find no prejudice to Brazzell from the court's handling of his objections, and we conclude that no abuse of discretion has been demonstrated.

### III

We now turn to Brazzell's contention that the trial court erred by refusing to grant him a mistrial, or in the alternative, a new trial, because of improper influences affecting the jury. Preliminarily we note the applicable standards of review. We will not disturb the district court's denial of the motion for a mistrial unless the event which precipitated the motion for a mistrial constitutes reversible error, when viewed in the context of the full record. *State v. Guinn*, 114 Idaho 30, 34, 752 P.2d 632, 636 (Ct.App.1988). As to the motion for a new trial, the district court's decision could be disturbed only if Brazzell showed that the court abused its discretion. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982).

Having these standards in mind, we now focus on the jury problems claimed by Brazzell. Idaho Code § 19–2406(2) provides that a new trial may be granted if "the jury has received any evidence out of court other than that resulting from a view of the premises." Brazzell asserts that the jury was exposed to extrinsic evidence from several sources. First, during the trial, the jury walked past a "Victim's Rights Week" rally at the courthouse. Second, one juror reported to the court that he was followed home one night by a stranger. Third, another juror made inappropriate comments to the other jurors,

including a statement that she had watched the television news the night before and "what was said on the news was nothing like what went on in the courtroom." As a consequence, she was removed from the panel, leaving no alternate jurors. The court then told the jury there were no alternates left and that it was absolutely necessary that the remaining jurors should "stay together" as a jury. Brazzell asserts that these problems tainted the jury's verdict, warranting a mistrial or new trial.

Reviewing these events in the context of the entire record, we are not persuaded that these problems, troubling though they were, mandated a mistrial or new trial. The trial court acted promptly when each event occurred. After the rally, the court spoke to the jury and told them to disregard the incident. When the juror reported being followed home, the court interviewed him separately and was told that the juror had not discussed it with the rest of the jury. The juror also stated that he felt able to remain an impartial juror. Regarding the third incident, we have noted that the juror who spoke of her exposure to the media was removed from the panel. After her departure, the court asked the panel if each member could remain fair and impartial, and each said yes. We believe the court took appropriate action in each instance. We also find no error in the judge commenting to the panel that there were no alternates left—a fact manifestly obvious to them. We believe these incidents did not generate reversible error. The judge did not act improperly by refusing to grant Brazzell a mistrial; nor did he later abuse his discretion by refusing to order a new trial because of the same jury problems.

### IV

Brazzell next contends that the district court erred in refusing to grant him a new trial because of newly discovered evidence. Motions for a new trial are governed by I.C. § 19–2406 and I.C.R. 34. The rule allows a court to order a new trial "if required in the interest of justice." The statute provides grounds for a new trial

after a verdict has been rendered. As we observed earlier, the decision whether to grant a new trial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *State v. Olin*, 103 Idaho 391, 648 P.2d 203 (1982). A motion for new trial based specifically upon newly discovered evidence must satisfy the following tests: (1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal—that is, created a reasonable doubt of guilt; and (4) failure to learn of the evidence was through no lack of diligence on the part of the defendant. *State v. Ames*, 112 Idaho 144, 730 P.2d 1064 (Ct.App.1986).

 Here, the new evidence concerns a plea bargain made by Mike Williams, who—as noted—testified against Brazzell. When Williams testified, he was asked whether he had done so in return for a plea bargain. Williams answered that he had not made a plea agreement with the prosecution. The prosecutor referred to this in closing argument when he said that Williams would be standing trial shortly for his part in Kline's murder. However, a plea agreement was reached and—two weeks after Brazzell was convicted—Williams was released from confinement on a plea agreement and sentenced to probation. Brazzell contends that if this information had been available at the trial, the result might have been an acquittal for him. We are not persuaded. Williams' testimony, as we have seen, was directed largely toward the prosecution's theory of a motive for first degree murder. The jury found second degree murder instead. The fact that Brazzell had shot Kline twice with the shotgun was undisputed. What Brazzell disputed was Williams' testimony that Brazzell also had shot Kline with the derringer. Brazzell maintained that Williams fired those shots. Be that as it may, the undisputed evidence remained that Brazzell twice shot an unarmed man with a shotgun. We cannot view it as probable that the jury would have acquitted Brazzell, on his claim of self-defense, merely because

they were informed Williams had entered into a plea agreement with the state. The court did not err in denying a new trial on such new evidence.

## V

 Finally, we turn to the sentencing issue. Brazzell asserts that his sentence of life imprisonment, with a ten-year minimum period of confinement, is too harsh. He could have received a life-long period of confinement for the second degree murder. *See* I.C. § 18–4004. When a sentence is within the statutory limit, we will not reverse it unless an abuse of discretion is shown. A sentence may represent such an abuse if it is demonstrated to be unreasonable upon the facts of the case. *State v. Adams*, 106 Idaho 309, 678 P.2d 101 (Ct.App.1984).

 When determining the reasonableness of a sentence, we consider the probable duration of the confinement and the reasonableness of such confinement. *State v. Toohill*, 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). Where, as here, the sentence has been imposed under the Unified Sentencing Act, the minimum period prescribed by the judge generally will be treated as the probable measure of confinement for the purpose of sentence review. *State v. Sanchez*, 115 Idaho 776, 769 P.2d 1148 (Ct.App.1989). In evaluating the reasonableness of such confinement, we will apply the substantive criteria set out in *Toohill*, 103 Idaho at 568, 650 P.2d at 710. The criteria of retribution and deterrence bear directly on the minimum period of confinement, which is the judicially determined "price" of the crime. The minimum period also carries implications for rehabilitation and the protection of society because it "establishes a prospective time frame for institutional correction programs and for evaluation of the prisoner's eventual suitability for parole...." *Sanchez*, 115 Idaho at 777–78, 769 P.2d at 1149–50.

We consider these criteria in relation to the nature of the offense and the character of the offender. *State v. Amerson*, 113 Idaho 183, 185, 742 P.2d 438, 440 (Ct.App.

1987) (review denied). Here, the district judge imposed a sentence requiring at least ten years in prison because this was a crime of "utmost violence." Although Brazzell had no prior felony convictions, he had been convicted in the past for assault and for misdemeanors involving use of firearms. The judge stated that, in his opinion, Brazzell's past history created a great potential for violence in the future. The judge further noted that he had taken a statutory firearm enhancement into consideration when imposing the penitentiary term. The judge's comments contain sound reasons for his sentencing decision. We hold that there was no abuse of discretion.

In conclusion, we affirm the judgment of conviction for second-degree murder, including the sentence imposed.

WALTERS, C.J., and GOFF J., pro tem., concur.