801 P.2d 1299

STATE of Idaho, Plaintiff–Respondent,

v.

Matilde Y. RODRIGUEZ, Defendant–Appellant.

No. 18390.

Court of Appeals of Idaho.

Nov. 29, 1990.

Gara B. Newman, Rupert, for defendant-appellant.

Jim Jones, Atty. Gen. and Jack B. Haycock, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

Matilde Rodriguez was charged with delivery of cocaine, a controlled substance. I.C. § 37–2732(a)(1)(B). He waived his right to a jury and was found guilty of the charge following a trial before the court. Rodriguez received a unified sentence of nine years, with a fixed term of three years' incarceration. On appeal, Rodriguez challenges the district court's decision to exclude testimony that Rodriguez contends was relevant to his defense of entrapment. Rodriguez further asserts that the sentence imposed was excessive. As explained below, the judgment of conviction, including the unified sentence, is affirmed.

The following facts were presented at trial. A police informant, Joe Beltran, telephoned Rodriguez and asked if he would sell him cocaine. Rodriguez responded that he did not have any cocaine, but agreed to make some telephone calls to try to find someone who did. Beltran telephoned Rodriguez several more times that day, and ultimately arranged to meet Rodriguez for the purpose of selling cocaine to Scott Ward, an undercover police officer. Beltran and Ward then met at the local sheriff's office, where Beltran was searched to make sure he was not in possession of any controlled substances. They left the office and drove to Rodriguez' home. Rodriguez arrived at about the same time as Ward and Beltran and they went into the house together. Rodriguez removed two plastic bags of cocaine from his trouser pockets and placed them on a table. He used a set of scales to measure a quarter ounce of cocaine from one of the bags. The measured cocaine was given to Ward. Ward in turn placed four hundred and twenty dollars on the table in front of Rodriguez and then left with Beltran. They returned to the sheriff's office where Beltran was again searched to make sure he was not carrying any drugs. Rodriguez subsequently was arrested and charged with delivery of cocaine.

At trial, Rodriguez maintained that he did not supply the cocaine for the transaction, but rather that he was unable to locate any cocaine, and that Beltran had agreed to supply the cocaine himself. Rodriguez asserted that Beltran offered him fifty dollars to operate the scales, which was his sole involvement in the transaction. Contrary to the testimony of Officer Ward and of Beltran, Rodriguez testified that Beltran initially entered the house alone, leaving Ward outside for several minutes. Rodriguez related that before Ward entered the house, Beltran produced the bags of cocaine from a small box wrapped in clothing and set it on the table. Rodriguez claimed that when Beltran walked outside to signal Ward to come in, Rodriguez became nervous and hid the cocaine in his pockets. Once Ward was inside, Rodriguez removed the bags and replaced them on the table.

Rodriguez also testified that he spoke to Beltran several months following his arrest, and that Beltran told him that he had been "in trouble" and had needed "to get five people in trouble" in order to get himself out of the situation. Beltran denied these allegations.

At the conclusion of the trial, the court found Rodriguez guilty. The court specifically found that the testimony of officer Ward and of Beltran was more credible than the evidence introduced by Rodriguez. On appeal, Rodriguez does not directly challenge the sufficiency of the evidence to support the court's verdict. Instead he claims the court erred in refusing to admit other evidence offered by the defense.

Rodriguez sought to introduce the testimony of two witnesses who had been arrested and charged with delivery of cocaine in separate, unrelated transactions with Beltran. Through an offer of proof, counsel for Rodriguez informed the court the first witness would testify that Beltran had persistently approached him seeking to purchase cocaine, until the witness sold him cocaine. The testimony of the second witness would have been that Beltran tried to get him to sell cocaine, and when he was unable to locate any, Beltran himself supplied the drugs, but persuaded the witness to make the sale. Counsel related that both witnesses were subsequently arrested and separately charged with delivery of a controlled substance. Following Rodriguez' presentation, the trial judge excluded the evidence, stating that "the probative value of this evidence is outweighed by its remoteness." Rodriguez maintains that this testimony was relevant to his entrapment defense for the purpose of showing the conduct of the government agents. He argues that the court erred in refusing to allow it into evidence.

## I

Preliminarily, we note that, in asserting the conduct of the government as an issue in the case, Rodriguez relies upon *State v.*

*Mata,* 106 Idaho 184, 677 P.2d 497 (Ct.App. 1984), in which we discussed the varying theories underlying the defense of entrapment. We observed that Idaho courts traditionally have adhered to a "subjective" approach, which focuses on whether the intent to commit the crime originated in the mind of the defendant, rather than placed there by the government. We also recognized that other jurisdictions have taken a broader approach, examining the objective conduct of the government viewed in light of its probable impact, not upon the particular defendant, but upon the average person other than one who is willing to commit such an offense. *Id.* However, in *Mata,* we noted that the Idaho Supreme Court had yet to pass upon the merits of the latter approach, and that because the question whether the unlawful conduct of the government would provide a cognizable basis for maintaining the defense in this state was not squarely before us, we did not need to decide it and resolved the case on other grounds. Likewise, as our discussion below indicates, we believe that the trial court properly excluded the evidence, regardless of whether a subjective or objective approach to analysis of the entrapment defense is applicable.

## II

We turn now to the evidentiary issue. Rodriguez maintains that the trial court erred in excluding evidence of Beltran's and Ward's other acts and conduct offered through the testimony of two witnesses. We note that evidence of a person's actions and conduct, other than that set forth as an ultimate issue for trial, is generally inadmissible under I.R.E. 404(b). This rule provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." The basis for the inadmissibility of a person's "other acts" is that such evidence is not relevant to prove the conduct in question. 22 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCE-

DURE: EVIDENCE § 5239 (1978). However, Rule 404(b) further states that "other acts" evidence may be admissible for purposes other than to prove how a person acted on a given occasion. These permissible uses include proof of motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident.[1]

■ However, establishing that the evidence of other acts is relevant for some purpose not involving the forbidden inference of a propensity does not render the evidence automatically admissible. Rule 404(b) states only that the evidence "may" be admissible for some other purpose. Thus, prior to admitting the evidence, the trial judge must be satisfied that the probative value of such evidence is not outweighed by the considerations listed in I.R.E. 403. *See* 22 WRIGHT & GRAHAM, *supra*, § 5240, at 469–72.

■ In determining whether such evidence is admissible, the court looks to the purpose for which the evidence is offered. McCORMICK ON EVIDENCE, § 188, at 553 (E. Clearly ed. 1984); *see State v. Hedger*, 115 Idaho 598, 602, 768 P.2d 1331, 1335 (1989). In this case, counsel for Rodriguez informed the court that the testimony of the first witness was being offered to show "that it was [Beltran's] procedure to go to someone who may or may not be dealing in drugs and pester them [sic] until he can get them [sic] to deal in drugs." Based upon this record, it appears to us the testimony was offered to prove that Beltran acted in conformity with a character trait—being an overreaching government informant who would coerce innocent people into dealing in drugs. Clearly, the evidence would be inadmissible for this purpose.

■ It is also conceivable that the defense's offer to prove Beltran's "proce-

dure" was an attempt to bring the testimony within the exception for habit evidence provided in I.R.E. 406. A "habit" is a person's regular practice of responding to a particular situation with a specific kind of conduct. *See State v. Hedger, supra*, at 602, 768 P.2d at 1335. The existence of a personal habit may be established by a knowledgeable witness' testimony that there was such a habit. *See, e.g., Hedger*. We note that central to the distinction between "habit" evidence and "character" evidence is the element of *frequency. See* 23 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5273, at 34 (1980). Here, the testimony offered would show, at best, that two persons had been "pestered" by Beltran. We hold that this was not a sufficient indication of the existence of a habit to permit admission of the evidence under Rule 406. *See, e.g., Reyes v. Missouri Pacific R.R. Co.*, 589 F.2d 791, 795 (5th Cir.1979).

■ Furthermore, we conclude that the testimony offered was irrelevant to Rodriguez' defense and, on that basis also, was inadmissible. It was Rodriguez' own testimony that, during the very first telephone conversation with Beltran, he agreed to assist Beltran in locating cocaine. Regardless of whether Beltran had "pestered" other people into selling drugs, that clearly was not the case with Rodriguez. Accordingly, we hold the evidence was inadmissible and properly was excluded by the trial court.

The testimony of the second witness, indicating that in a separate, unrelated case Beltran himself had supplied the cocaine for what properly was to be a controlled government purchase, was offered by the defense to prove the conduct of the government agents in Rodriguez' case. As discussed above, testimony offered for such purposes is clearly prohibited by the terms

---

1. There are numerous "other purposes" for which evidence of a person's other crimes, wrongs or acts may be permitted; those enumerated are neither mutually exclusive nor collectively exhaustive. For a discussion of some of the typical uses to which such evidence may be put, see McCORMICK ON EVIDENCE, at § 190, p. 553 (E. Clearly ed. 1984).

of I.R.E. 404(b).[2]

The trial court's oral ruling that "the probative value of the evidence is outweighed by its remoteness," suggests the court found the evidence admissible, but that, in the exercise of its discretion, determined that the probative worth of the evidence was outweighed by the countervailing considerations listed in I.R.E. 403. However, because we conclude the testimony was not offered for any permissible purposes, and was therefore inadmissible, we need not review the trial court's exercise of discretion, except to comment that Evidence Rule 403 contains a comprehensive list of discretionary factors which the court may consider in excluding evidence, and requires that the trial judge weigh those factors against the probative worth of the evidence. We hold that it was not error for the court to exclude the testimony of Rodriguez' two witnesses.

### III

 Finally, we address Rodriguez' contention that the sentence imposed by the trial court was excessive. Rodriguez' sentence, an indeterminate term of nine years, with a minimum period of three years' incarceration, is clearly within the statutory maximum of a fixed life sentence. I.C. § 37–2732. In his brief, Rodriguez states the legal standards applicable to the sentencing court's exercise of discretion in determining the length of a defendant's period of confinement. However, Rodriguez simply asserts that his sentence was excessive, without providing any argument showing that the sentence was unreasonable in light of the facts of his case. *State v. Nice,* 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). In view of the criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), and *State v. Sanchez,*

115 Idaho 776, 769 P.2d 1148 (Ct.App.1989), we conclude that the district court did not abuse its discretion in sentencing Rodriguez. Accordingly, the judgment of conviction for delivery of cocaine, including the unified sentence, is affirmed.

SWANSTROM and SILAK, JJ., concur.

However, the record before us indicates that the only use of the evidence proposed by the defense was to prove the government conduct in the instant case. Accordingly, we will not speculate as to other permissible purposes not articulated by the proponent of the evidence.

2. Arguably, the evidence may have been admissible for other purposes, such as to corroborate Rodriguez' testimony that Beltran had a plan or scheme "to get five people in trouble" for selling drugs, implying that both the witness and Rodriguez were victims of Beltran's larger plan.