844 P.2d 1364

STATE of Idaho, Plaintiff–Respondent,

v.

Ralph MEDRANO, Defendant–Appellant.

No. 19234.

Court of Appeals of Idaho.

Dec. 4, 1992.

Petition for Review Denied Feb. 18, 1993.

Whittier, McDougall, Souza, Murray & Clark, Pocatello, for defendant-appellant. John C. Souza argued.

Larry J. EchoHawk, Atty. Gen., Joel D. Horton, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

SILAK, Judge.

Appellant, Ralph Medrano, was charged with and found guilty by a jury of first-degree kidnapping. I.C. § 18–4502. Medrano was sentenced to an indeterminate term of life, with a fixed term in prison of eighteen years. At trial the court denied a motion to suppress the testimony of law enforcement personnel on the grounds that the motion was untimely under I.C.R. 12(d). The court overruled Medrano's further objection that the testimony of the law enforcement personnel should be excluded because he was not given warnings required by *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). The court also denied a motion in limine asserted by Medrano to prevent the testimony of two young girls based on the reasoning that the testimony was relevant and the prejudice did not outweigh the probative value. For the reasons stated below, we affirm.

On September 20, 1990, a fourteen-year-old girl was abducted while walking to school in Pocatello. Prior to being abducted the girl noticed a small brown car, operated by Medrano, pass by and honk at her. After the car drove by she was grabbed from behind and forced into the same car. Medrano then drove slowly down the street while forcing his hand past her elastic waistband and down her pants, touching her vagina. Subsequently he reached under her shirt and fondled her breasts before letting her out in the vicinity of her school. The girl reported the incident to school officials who in turn notified the police. During the investigation by the Pocatello Police Department it was discovered that two other girls identified Medrano as the person who had driven by and honked at each of them prior to the day when the victim in this case was abducted. On October 1, 1990, Detective Madden of the Pocatello Police Department went to Medrano's home and asked Medrano if he was willing to go to the police station for an interview. Medrano agreed after he was told that he was not under arrest. Detective Madden transported Medrano to the station; Medrano again was told that he was free to go at any time. During the course of the interview, Medrano admitted that he had offered two young girls rides to school and that he might have touched one of them as the girl got out of his car. However, Medrano denied any wrongdoing and knowledge of the girl that had been abducted in this case.

Medrano claims the following errors:
1. The trial court abused its discretion by ruling that his motion to suppress the investigating officer's testimony concerning admissions Medrano had made was untimely under I.C.R. 12(d).
2. The trial court erred by overruling his objection to the investigating officer's testimony on the grounds that he was not given *Miranda* warnings.
3. The trial court should have granted his motion in limine to prevent the two other girls from testifying because their testimony was irrelevant and prejudicial.
4. The trial court abused its discretion by not considering the goal of rehabilitation and all the facts when it sentenced him to a fixed term of eighteen years and an indeterminate term of life.

## MOTION TO SUPPRESS

Medrano argues that the trial court abused its discretion by not allowing his

motion to suppress because he had shown "good cause" for not filing the motion on time. Medrano does not dispute that the motion to suppress was filed untimely on the day of trial. Idaho Criminal Rule 12(d) gives the court discretion to allow an untimely motion if there is "good cause shown." However, a "court may not arbitrarily enlarge or shorten the filing requirements of the rule." *State v. Alanis*, 109 Idaho 884, 888, 712 P.2d 585, 589 (1985). The state objected to the motion claiming it was untimely. In response to the court's question as to why the motion was filed late, Medrano's counsel stated:

> We did have the preliminary hearing. The specific statement as to Officer Shaw was just received by our office, the officer's statement itself. We were aware that he testified at the prelim, [sic] but his statement was just received in the last few days from the prosecuting attorney's office. But as far as a reason it wasn't filed earlier, I don't have any reason other than we just waited until closer to the time of trial to file it.

The court noted that the jury had already been sworn in and was waiting to try the case, that the preliminary hearing had been held two months earlier in November, 1990, and that the court had not been given a chance to research the issues surrounding the motion. Therefore, the court denied the motion, but stated it would allow Medrano to object and argue the constitutional challenges to the testimony during trial. Medrano has failed to present to this Court any additional reasons for the untimely motion, therefore we hold that the district court did not abuse its discretion by denying the motion to suppress the officer's testimony, particularly since he was later given the opportunity to argue for exclusion during trial.

## MIRANDA WARNINGS

In resolving a question as to whether *Miranda* warnings apply, an appellate court will not reverse a trial court where there is substantial competent evidence to support the factual findings. *State v. Kirkwood*, 111 Idaho 623, 625, 726 P.2d 735, 737 (1986). However, the application of legal principles to the factual findings is subject to free review. *State v. Hiassen*, 110 Idaho 608, 611, 716 P.2d 1380, 1383 (Ct.App.1986).

■ Medrano argues that the district court erred by admitting statements he made to the investigating officer because he was not given *Miranda* warnings. *Miranda* warnings are triggered by custodial interrogation. *See State v. Ybarra*, 102 Idaho 573, 576, 634 P.2d 435, 438 (1981). The United States Supreme Court equated custody with a person being "deprived of his freedom by the authorities in any significant way." *Miranda*, 384 U.S. at 478, 86 S.Ct. at 1629. This test has been refined to mean when a person's freedom of action is "curtailed to a 'degree associated with formal arrest.'" *State v. Myers*, 118 Idaho 608, 610, 798 P.2d 453, 455 (Ct.App. 1990) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317 (1984)). The Court, in *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 713, 50 L.Ed.2d 714 (1977), on similar facts as the present case, instructed that the "test is an objective one based on the surrounding circumstances." To determine if a suspect is in custody, this Court, subsequent to *Mathiason*, adopted the Supreme Court's test that "the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Myers*, 118 Idaho at 611, 798 P.2d at 456 (quoting *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151).

■ Medrano argues that the circumstances surrounding his admissions during interrogation support a finding that a reasonable person would believe that he was in custody and therefore he should have been given *Miranda* warnings. The state argues that because the facts here are similar to those in *Ybarra* the district court did not need to look beyond the fact that Medrano was asked to go to the police station and agreed. The fact that Medrano went to the station voluntarily and the officer told him he was not under arrest and that he was free to go are not dispositive. We must review the "totality of all the

circumstances" that are presented in the record. *See Ybarra*, 102 Idaho at 578, 634 P.2d at 440 (citing *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980)); *see also* WILLIAM E. RINGEL, SEARCHES & SEIZURES ARRESTS AND CONFESSIONS §§ 27.3(a)–(c) (circumstances to be considered when determining whether a defendant is in custody are: location of interrogation, conduct of the officers, nature and manner of the questioning, time of interrogation, and other persons present).

■ Medrano argues that he was in custody based on the following facts: he was transported to the station by the police and had no independent transportation to leave if he had wanted; he was a suspect and the focus of the investigation; and the purpose of the interrogation was to elicit information upon which criminal charges could be based. These facts alone are also not dispositive. Although the court focused on the facts that Medrano had gone to the station voluntarily, was informed that he was not under arrest, and was free to leave, the court also explicitly based its decision on the whole record. The facts pointed to by both Medrano and the state are undisputed. The record indicates Medrano was interviewed by only one officer and he was allowed to leave after the interview without being arrested. The totality of the circumstances considered by the court indicate to this Court that Medrano was not in custody when he was interviewed by Detective Madden. Therefore, we affirm the court's decision to allow Detective Madden to testify as to what Medrano admitted during the interview.

## PRIOR ACTS

■ Medrano argues that the court abused its discretion in denying his motion in limine to exclude testimony of two young girls concerning Medrano's activities while driving by them. The girls were allowed to testify that a man they identified as Medrano drove by each one while walking to school alone, honked, waved and turned his car around. Medrano claims that the court erred by allowing the testimony under the state's theory of a "common scheme or plan" pursuant to I.R.E. 404(b) because the testimony was irrelevant to any material issue and the prejudice of its admission substantially outweighed the probative value.

A trial court's decision as to the admissibility of evidence involves the exercise of discretion and the ruling will be deemed erroneous only when the trial court has clearly abused that discretion. *State v. Martin*, 118 Idaho 334, 336, 796 P.2d 1007, 1009 (1990). When we review a matter of discretion we conduct a multi-tiered inquiry to determine:

(1) whether the lower court rightly perceived the issue as one of discretion; (2) whether the court acted within the outer boundaries of such discretion and consistently with any legal standards applicable to specific choices; and (3) whether the court reached its decision by an exercise of reason.

*State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989) (citing *Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987)). Therefore, this discretion is not unbridled. The limitations of this discretion have been described as follows:

[T]his is not a discretion to depart from the principle that evidence of other crimes, having no substantial relevancy except to ground the inference that [the] accused is a bad man and hence probably committed this crime, must be excluded. The leeway of discretion lies rather in the opposite direction, empowering the judge to exclude the other-crimes evidence, even when it has substantial independent relevancy, if [the probative value is outweighed by its prejudice]. Discretion implies not only leeway but responsibility.

*State v. Stoddard*, 105 Idaho 533, 537, 670 P.2d 1318, 1322 (Ct.App.1983) (citing McCORMICK, HANDBOOK OF THE LAW OF EVIDENCE, § 190 (E. Cleary ed. 1972)).

Idaho Rule of Evidence 404(b) provides that "evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the

person acted in conformity therewith." The rule also provides that "other acts" may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, or as in this case a plan. The theory that the state advanced at trial for admitting the evidence and the theory that the court used to admit the evidence was under the "common scheme or plan" exception. However, we note "that evidence of a person's actions and conduct, other than that set forth as an ultimate issue for trial, is generally inadmissible under I.R.E. 404(b)." *State v. Rodriguez*, 118 Idaho 948, 950, 801 P.2d 1299, 1301 (Ct.App.1990). Further, we have stated:

> The "common scheme or plan" exception is often misinterpreted. A plan or design ordinarily is not an element of a criminal offense. It is not an element of [kidnapping]. Therefore, evidence showing the existence or absence of a plan would be irrelevant unless related to some other material issue in the case.... However, this exception applies only where it is the existence of the plan itself, rather than any general inferences about the character of the defendant, which is probative on the issue in question. This distinction, although sometimes elusive, is important in order to preserve the integrity of the prohibition against specific act character evidence.

*State v. Lawrence*, 112 Idaho 149, 156, 730 P.2d 1069, 1076 (Ct.App.1986) (citing 22 WRIGHT & GRAHAM, FEDERAL PRACTICE AND PROCEDURE: EVIDENCE § 5244 (1978)) (citations omitted). The mere use of the words "scheme or plan" add nothing to a case for the admission of prior acts. "The proffered evidence must still be analyzed to determine whether it proves something material, disputed, and beyond bare disposition." *People v. Alcala*, 36 Cal.3d 604, 205 Cal.Rptr. 775, 792, 685 P.2d 1126, 1143 (1984) (en banc).

■ In *State v. Brazzell*, 118 Idaho 431, 434, 797 P.2d 139, 142 (Ct.App.1990), we noted that:

> [t]he first inquiry is whether the evidence is relevant to a material and disputed issue concerning the crime charged. The second inquiry involves a

determination of whether the probative value of the evidence is outweighed by unfair prejudice to the defendant.

In determining whether evidence of certain acts by a defendant are relevant the court must "look to the purpose for which the evidence is offered." *Rodriguez*, 118 Idaho at 951, 801 P.2d at 1302 (citing McCORMICK ON EVIDENCE, § 188, at 553 (E. Cleary ed. 1984)).

The state, in its brief, agrees that the proffered testimony must be relevant to a disputed issue, however, it has abandoned its claim that the evidence was relevant to prove a scheme or plan and now claims the evidence was relevant to prove identity. Because the court based its discretionary decision on the "common scheme or plan" argument presented by the state at trial we must review the court's decision under that theory.

■ The outer boundary of the admissibility of conduct offered to prove a plan is whether that plan is a "fact of consequence to the determination of the action." *Brazzell*, 118 Idaho at 434, 797 P.2d at 142 (citing I.R.E. 401). The facts of consequence in this action are the elements of first-degree kidnapping under I.C. §§ 18–4501, 18–4502. There is no "plan" element in first-degree kidnapping. The existence of facts that support an inference that Medrano had a plan to pick up young girls is irrelevant to any issue in dispute. Therefore, we hold that the court exceeded the bounds of its discretion when it chose to apply the legal standard of "common scheme or plan" to facts that were not relevant to any disputed issue. Our inquiry does not end here; we must now determine if the error was harmless.

■ Idaho Rule of Evidence 103 indicates that an error in the admission of evidence will not require a conviction to be set aside unless it affects a substantial right. "The rule incorporates existing Idaho law regarding harmless error" under I.C.R. 52. GEORGE M. BELL, HANDBOOK OF EVIDENCE FOR THE IDAHO LAWYER, Idaho Evidence Committee Comments to Rule 103,

37 (1987). An error is harmless if it does not affect a substantial right. I.C.R. 52.

> The determination of whether a substantial right has been affected hinges on whether it appears from the record that the error contributed to the verdict. An error is harmless if, and only if, the appellate court is able to say, beyond a reasonable doubt, that the jury would have reached the same result absent the error.

*Brazzell,* 118 Idaho at 435, 797 P.2d at 143 (citing *State v. Boehner,* 114 Idaho 311, 315, 756 P.2d 1075, 1079 (Ct.App.1988)). As in *Brazzell,* the question is whether the jury would have reached a verdict of guilty even without the two girls' testimony about Medrano's driving by and honking and waving at them. The fact that the victim testified that a man she positively identified as Medrano drove by and honked at her, then turned around and stopped behind her before she was forcibly abducted and subjected to sexual assault is direct evidence going to all of the elements of the charged kidnapping. In addition, the victim's testimony was supported by Medrano's own admission to Detective Madden, as testified to by Detective Madden, that Medrano had driven by and honked at a young girl in the vicinity and time frame of the victim's abduction. Medrano also admitted that he had touched the girl when she got out of his car. This evidence was sufficient for a jury to conclude that Medrano had committed first-degree kidnapping. Therefore, we hold that the error of admitting the two girl's testimony was harmless error.

## SENTENCE REVIEW

Medrano argues that the court abused its discretion by imposing a fixed term of eighteen years and by denying his Rule 35 motion. Medrano contends that the court failed to consider the related goal of rehabilitation and did not consider fully the facts and circumstances surrounding the case. We disagree.

■ In order for Medrano to prevail he bears the burden of showing that the sentencing court clearly abused its discre-

tion in fashioning the sentence imposed. *State v. Bolton,* 119 Idaho 846, 851, 810 P.2d 1132, 1137 (Ct.App.1991). A sentence within the statutory limit will not be disturbed absent abuse of discretion. *State v. McPhie,* 104 Idaho 652, 656, 662 P.2d 233, 237 (1983). A sentence shown to be unreasonable on the facts of the case may represent an abuse of discretion. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982), *e.g., State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). A sentence is reasonable if it appears that the sentence is necessary "to accomplish the primary objective of protecting society and to achieve *any or all* of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *Toohill,* 103 Idaho at 568, 650 P.2d at 710 (emphasis added). In reviewing a particular sentence, we conduct an independent examination of the record, focusing upon the nature of the offense and the character of the offender. *State v. Reinke,* 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct.App.1982). However, where reasonable minds may differ on a sentence we will not substitute our view for that of the sentencing judge. *Toohill,* 103 Idaho at 568, 650 P.2d at 710.

■ The criteria for reviewing the denial of a motion for reduction of a sentence are the same as those applied in determining whether the original sentence was reasonable. *State v. Lopez,* 106 Idaho 447, 450, 680 P.2d 869, 872 (Ct.App.1984). "If the sentence is not excessive when pronounced, the defendant must later show that it is excessive in view of new or additional information presented with his motion for reduction." *State v. Hernandez,* 121 Idaho 114, 118, 822 P.2d 1011, 1015 (Ct.App.1991). Because Medrano did not present any new information at his Rule 35 hearing, the following analysis will apply to Medrano's argument that the original sentence was error and also to his contention that the court abused its discretion in denying his Rule 35 motion.

■ The fixed minimum period of the sentence will generally "be treated as the probable measure of confinement for the purposes of sentence review." *State v.*

*Sanchez,* 115 Idaho 776, 777, 769 P.2d 1148, 1149 (Ct.App.1989). The fixed sentence of eighteen years that Medrano appeals is lawful because it is within the statutory maximum of life in prison. I.C. § 18–4504. Because Medrano's sentence is lawful we must next determine if it is reasonable.

 The court specifically focused on the nature of the crime, noting that Medrano was an adult male who had forcefully abducted a young girl who was walking to school and molested her. The court also addressed Medrano's character, noting that he was a prior sex offender whose motive in this case was to satisfy his sexual desire for young girls. In addressing the *Toohill* factors, the court determined that the protection of society was the most important factor to be considered, particularly the safety of young girls on their way to school. Additionally the court indicated that the sentence was punishment meant to deter not only Medrano but others who might be considering this type of crime. Finally, contrary to Medrano's argument that the court failed to consider rehabilitation we note that the court, after considering the presentence report and quoting the section that noted Medrano's "compulsion to engage in deviant sexual behavior ... in spite of intensive psychiatric help,"[1] found that Medrano was not a fit candidate for probation. We hold that the sentence is reasonable under the circumstances of this case.

## CONCLUSION

The court properly ruled Medrano's motion to suppress was untimely under I.R.C. 12(b) given that Medrano presented no good cause for the delay in filing the motion. The admission of Detective Madden's testimony was proper because Medrano was not in custody at the time he gave Detective Madden incriminating information. The court's erroneous admission of the two girls' testimony was harmless con-

sidering the other evidence presented upon which a jury reasonably could have found Medrano guilty. Finally, the sentence imposed was reasonable in light of the nature of the offense and Medrano's character. We affirm the judgment of conviction and sentence.

WALTERS, C.J., and SWANSTROM, J., concur.

---

1. Medrano claims that this quoted section of the presentence report indicates the need for additional psychiatric evaluation before sentencing and because the court failed to order the additional evaluation the sentence is unreasonable.

However, we note that Medrano failed to present any evidence that another evaluation would have had any effect on the court's determination.