**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 46135**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: November 18, 2019** |
| Plaintiff-Respondent, | ) |
| | ) **Karel A. Lehrman, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| CHRISTOPHER SCOTT FRANKS, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Nancy Baskin, District Judge.

Order denying motion to suppress and judgment of conviction, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Kimberly A. Coster, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Ted S. Tollefson, Deputy Attorney General, Boise, for respondent.

---

GRATTON, Chief Judge

Christopher Scott Franks appeals from his judgment of conviction and sentence for trafficking in heroin. Franks argues the district court erred in denying his motion to suppress. Specifically, he argues his statements were involuntarily made and must be suppressed under *Miranda v. Arizona*, 384 U.S. 436 (1966). For the reasons set forth below, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Deputy Zuberer, a Deputy at the Ada County jail, received information that drugs were present in two specific cells: 710 and 740. Franks was being held at the jail in cell 710, awaiting trial on charges unrelated to this appeal. After receiving the tip, Deputy Zuberer reviewed Franks' Telemate[1] account and discovered a number of unusual transactions. With the assistance

---

[1]    Telemate is a system used by the Ada County Sheriff's Department to deposit funds for inmates.

of two other deputies, Zuberer opened cell 710 and handcuffed the occupants. The deputies then escorted the inmates to the shower area where they could perform individual strip searches for drugs. Per policy, Deputy Zuberer separated Franks from the other inmates to perform the search. Before doing so, the Deputy asked Franks if he had any drugs or weapons on him. Franks responded "no" but nodded his head in the affirmative and reached into his pants to remove a sock which he handed to Deputy Zuberer. The sock contained heroin.

The State charged Franks with trafficking in heroin and possessing major contraband inside the jail. He filed a motion to suppress, arguing his responses to the deputy's question were obtained in violation of his Fifth Amendment rights, were made involuntarily, and were the product of coercion.[2] The district court denied the motion, finding Franks was not in custody and so *Miranda* warnings were not required, and that his responses were voluntary. As part of a plea agreement, Franks pled guilty to trafficking in heroin (Idaho Code § 37-2732B(a)(6)), and reserved his right to appeal the denial of his motion to suppress. The district court entered judgment and Franks was sentenced to eighteen years with ten years determinate and eight years indeterminate. Franks timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Franks argues the district court erred in its determination that he was not in custody for purposes of *Miranda*. Specifically, Franks argues that under the correct application of law,

---

[2] Franks did not move to suppress the heroin which he handed to Deputy Zuberer, only the verbal statement and non-verbal admission he made in response to the deputy's question.

suppression of his incriminating responses was required. We disagree. The requirement for *Miranda* warnings is triggered by custodial interrogation. *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct. App. 1992). Determining whether an already incarcerated individual was subjected to a custodial interrogation has been specifically addressed by the courts. The United States Supreme Court has firmly rejected the assumption that incarceration automatically renders a prisoner "in custody" for purposes of *Miranda* even when that prisoner is isolated from the general prison population. *Howes v. Fields*, 565 U.S. 499, 508 (2012). Custody is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion.[3] *Id.* at 509. In *Howes*, the Supreme Court identified several relevant factors for courts to consider when examining whether a reasonable person or prisoner would have felt free to terminate the interrogation and leave. *Id.* These factors include the location of the questioning, its duration, statements made during the interview, the presence or absence of physical restraints during the questioning, and the release of the interviewee at the end of the questioning. *Id.* Here, Franks had been in custody for five weeks. The district court expressly considered the factors listed above in turn.

In addressing the first factor, the district court determined the location Franks was taken to perform the strip search was per proper jail protocol and that Franks was familiar with this procedure. It stated, "[T]he location was proper in that all eight inmates were moved to an area where the private strip-searches could take place, that that was normally done in the intake booking area because there are no cameras and for inmate privacy . . . ."

The court further noted that Franks had been involved in numerous strip searches and there was no evidence that would suggest that deputies do not have the right to search any inmate as part of "jail safety and the need to eliminate contraband from the jail." As the Supreme Court noted in *Howes*, normal jail processes, to which the inmates are accustomed, do not have the same coercive effect as those restrictions might were they not incarcerated. The record

---

[3] The *Howes* Court noted that the danger of coercion is not as great in the circumstance of an already incarcerated person because generally (1) a person who is already incarcerated does not experience the shock that comes with arrest and removal from familiar surroundings; (2) a person already incarcerated is not likely to be lured into speaking in order to secure prompt release; and (3) an already incarcerated person knows that law enforcement officers questioning him lack authority to affect the duration of his sentence. *Howes v. Fields*, 565 U.S. 499, 511 (2012).

3

establishes that a strip search is part of proper jail procedure, and was not used in a way that would be coercive.

As to duration, the second factor, the court determined that it was "extremely short" and a "standard officer safety question." We agree that this simple question was not posed to investigate a crime, but as part of standard protocol as Deputy Zuberer testified. After Franks responded "no" to the question, the Deputy did not ask any additional questions. It was Franks who volunteered the sock containing the drugs while nodding his head in the affirmative. Deputy Zuberer simply took the item and put it in his pocket.

The district court then addressed the presence of the handcuffs. The district court correctly determined that this factor was not particularly relevant since the physical restraints were removed shortly before the question was asked. The restraints could not have been in place because Franks' own testimony established that he was able to reach into his pants, retrieve the sock, and hand it to Deputy Zuberer. Franks argues that it was not standard procedure for inmates to be handcuffed when they were moved throughout the jail. This is not relevant in determining if, at the time Deputy Zuberer posed his question, Franks would feel free to leave. As noted in *Howes*, "the ordinary restrictions of prison life, while no doubt unpleasant, are expected and familiar and thus do not involve the same 'inherently compelling pressures' that are often present when a suspect is yanked from familiar surroundings in the outside world and subjected to interrogation in a police station." *Howes*, 565 U.S. at 511.

Though Franks focuses on the restriction of his freedom of movement, we recognize, as the district court did, that not all restraints amount to custody for purposes of *Miranda*. The district court properly found that Officer Zuberer's single question presented "no coercion to force the defendant to answer the [deputy's] question about drugs or weapons" and that he was not subject to custodial interrogation for purposes of *Miranda*.

Franks further asserts that his responses to Deputy Zuberer's question were involuntary and the product of coercion. We disagree. A response that is the product of police coercion, either physical or psychological, or that is otherwise obtained by methods offensive to due process, must be suppressed. *United States v. Patane*, 542 U.S. 630 (2004). To determine whether a defendant's incriminating responses were given voluntarily, a court must examine the totality of the circumstances and ask whether the defendant's will was overborne by police conduct. *Arizona v. Fulminante*, 499 U.S. 279, 287-88 (1991). A court should consider the

4

characteristics of the accused and the details of the interrogation, including whether *Miranda* warnings were given, the youth of the accused, the accused's level of education or low intelligence, the length of the detention, the repeated and prolonged nature of the questioning, and the deprivation of food or sleep. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The presence or absence of *Miranda* warnings is a particularly significant factor. *Missouri v. Siebert*, 542 U.S. 600, 608-09 (2004).

Having already determined *Miranda* warnings were not necessary, we need only address whether Franks' will was overborne by coercive conduct. The district court properly considered Franks' age, education, familiarity with the criminal justice system, and the length of the encounter. It determined that Franks was not a minor, but an adult familiar with the criminal justice system; there was no evidence his educational level would hinder his understanding; and the detention was exceptionally short and comprised of a single question without deprivation of food or sleep. We agree with the district court's determination that, based on the totality of the circumstances, there was no custodial interrogation or use of coercive methods that would render Franks' responses involuntary.[4]

## IV.

## CONCLUSION

Franks was not in custody for purposes of *Miranda* and his responses were not the product of coercion. Therefore, the district court did not err in denying his motion to suppress. Accordingly, we affirm the district court's denial of Franks' motion to suppress and the judgment of conviction.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

---

[4] Based on our conclusion that *Miranda* warnings were not required and Franks' responses were not coerced, we need not address the application of the inevitable discovery doctrine.