990 P.2d 753

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Terry R. ALBAUGH, Defendant–Appellant.**

**No. 24761.**

Court of Appeals of Idaho.

Dec. 7, 1999.

John M. Adams, Chief Public Defender, J. Bradford Chapman, Deputy Public Defender, Coeur d'Alene, for appellant. J. Bradford Chapman argued.

Hon. Alan G. Lance, Attorney General; Rebekah A. Cude, Deputy Attorney General, Boise, for respondent. Rebekah A. Cude argued.

LANSING, Judge.

This appeal questions whether the stop of a commercial truck driver at a roving port of entry weigh station, and the ensuing questioning of the driver by a port of entry officer and a state police officer, comported with the Fourth Amendment guarantee against unreasonable searches and seizures and with the strictures of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## FACTS AND PROCEDURAL HISTORY

While driving a commercial truck, Terry Albaugh entered a roving port of entry weigh station that had been set up by Officer Field of the Idaho State Police and Officer Childers, a port of entry officer employed by the Idaho Department of Transportation. Albaugh was initially questioned by Officer Childers, who inspected Albaugh's logbook and discovered that Albaugh was in violation of regulations governing logbook maintenance because he was twelve hours behind in his entries. In response to inquiries by Childers, Albaugh said that he had no weapon or radar detector in the truck, and Albaugh invited Childers to search the truck to verify this. Officer Childers then referred the matter to Officer Field to decide what should be done about the logbook violation

and to determine whether further investigation was needed. In addition to informing Officer Field of the logbook violation, Officer Childers told him that Albaugh seemed to be nervous and was not making eye contact with Childers. Officer Field then questioned Albaugh about the logbook discrepancy and, during the conversation, noticed that Albaugh's eyes were glassy and droopy and that Albaugh appeared to be nervous. When Officer Field repeated a question that had been asked by Childers, whether Albaugh had any weapons in the vehicle, Albaugh acknowledged that he had a loaded firearm in the truck. Upon receiving this disclosure, Officer Field asked Albaugh whether there was anything else in the truck "that was illegal or that I should know about." Albaugh initially said "No," but Officer Field pursued the questioning further. According to Field's testimony, "I told [Albaugh] that it looked like he probably had something else he wanted to tell me about and asked him if there was something else illegal in the vehicle." At that point, Albaugh disclosed that there was a vial of methamphetamine in the bunk area of the truck. Officer Field entered the truck, located both the weapon and the methamphetamine, and seized this evidence.

Albaugh was charged with possession of a controlled substance, Idaho Code § 37-2732(c)(1). He filed a motion to suppress the evidence found in his truck and statements he made to the officers, but the motion was denied by the district court. Albaugh thereafter entered a conditional plea of guilty, reserving the right to appeal the denial of his suppression motion. On appeal, Albaugh argues that the search of his truck was an unlawful "dragnet" search and that his statements to Officer Field should be suppressed because, before making the statements, he had not been told of his *Miranda* rights.

## ANALYSIS

### A. The Search and Seizure

Albaugh argues that what began as a lawful port of entry stop was transformed into an illegal "dragnet" seizure and search because Officer Field began asking Albaugh

questions that were unrelated to highway regulatory enforcement. Albaugh bases his argument upon the Idaho Supreme Court's decision in *State v. Medley*, 127 Idaho 182, 898 P.2d 1093 (1995), a case that arose from the operation of an Idaho Department of Fish and Game check station at which all vehicles were stopped. In that case, the check station was initiated by the Department of Fish and Game, but by invitation from that department, officers of the county sheriff's office, the United States Border Patrol, the United States Fish and Wildlife Service, the county law enforcement auxiliary and a county drug task force participated in the operation. With limited exceptions, all southbound vehicles on the highway were stopped, and all drivers were asked whether they had been fishing or hunting or possessed any fish or game. In many instances, once the Department of Fish and Game officers had completed their inquiry, officers from other agencies conducted their own inquiry as to violations unrelated to fish and game regulations. The Idaho Supreme Court held that the detention of vehicles at this check station constituted unreasonable seizures under the Fourth Amendment to the United States Constitution. The Court held that although routine fish and game check stations were a lawful method of enforcing state wildlife management laws, the stop in *Medley* was unlawful because it was not confined to the enforcement of Fish and Game laws, but encompassed any additional law enforcement agency wishing to participate for enforcement of laws not pertaining to fish and game. The Court noted that the procedure was not tailored to the advancement of the State's interest in the management of wildlife and left the officers at the scene with unfettered discretion in contravention of the Fourth Amendment.

In the case at bar, Albaugh concedes that the initial stop of his vehicle at the weigh station was lawful and that the presence of a state police officer who participated in the weigh station operations was not problematical.[1] He also concedes that it was permissi-ble for Officer Childers to ask Albaugh whether there was a weapon in the truck for officer safety reasons. He contends, however, that events occurring after Albaugh initially denied having a weapon converted the stop into a *Medley*-like dragnet seizure. Officer Field's follow-up questioning of Albaugh, he contends, went beyond port of entry issues and was impermissible under *Medley*.

We find Albaugh's argument unpersuasive. Even if we accept, *arguendo*, his premise that it would be improper for the state police officer to interrogate a truck driver, stopped at a weigh station, about matters unrelated to commercial motor vehicle regulations and highway safety, he has not shown that such a departure occurred here. Officer Field's conversation with Albaugh began with questions about the logbook violation, a topic clearly related to the purpose of the check point, and the officer then asked Albaugh whether he was carrying a weapon. We see nothing impermissible about mere repetition of a question that had been earlier answered by Albaugh, particularly where, as here, Albaugh's appearance and behavior were causing the officer some concern. By the time that Officer Field asked about weapons, he had noted that Albaugh appeared to be nervous (an observation shared by Officer Childers) and that Albaugh's eyes looked droopy and glassy. He had also been told by Officer Childers that Albaugh was avoiding eye contact while being questioned. Under these circumstances, the follow-up question about weapons was not unreasonable. Officer Field's next question, contrary to Albaugh's argument, was not something pointedly unrelated to commercial vehicle regulations but, rather, was a broad and open-ended inquiry. He asked if there was anything else in the truck that was "illegal" or that the officer should know about. This question was broad enough to invite disclosure by Albaugh of other illegalities, in addition to the logbook violation, related to traffic and commercial vehicle regulation. In response, Albaugh ac-

---

1. Officer Field testified that setting up weigh stations, and operating them with the assistance of port of entry officers, was a routine part of his duties. He said that when a port of entry officer would discover a violation, the port of entry officer would generally bring it to Officer Field for determination of how to pursue the matter.

knowledged that there was methamphetamine in the vehicle, but Officer Field never specifically questioned Albaugh about the possession of drugs. There is no showing that Officer Field engaged in questioning beyond the scope of an appropriate port of entry investigation or that he transformed the stop into a drug enforcement dragnet.

■ Moreover, even if Officer Field had specifically questioned Albaugh about drug use or drug possession, it would have been permissible in light of Albaugh's appearance and conduct. The appearance of Albaugh's eyes, his nervous behavior, and his apparent avoidance of eye contact suggested the possibility that he was driving under the influence of intoxicants, in violation of I.C. § 18–8004. Officer Field was justified in briefly questioning Albaugh to investigate this potential driving violation and threat to highway safety.

■ Albaugh has also argued that because he consented to a search by Officer Childers only, the subsequent search by Officer Field was not within the scope of Albaugh's consent and was therefore an unlawful, warrantless search. Albaugh's argument presupposes that the only lawful basis for the search was his consent, a premise that is incorrect on the facts presented here. Although the search of an automobile without a warrant is presumptively a Fourth Amendment violation, such a search is lawful if it falls within one of the well-established exceptions to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2031–32, 29 L.Ed.2d 564, 575–66 (1971); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). One of these is the "automobile exception" under which law enforcement officers may search an automobile and the containers within it if there is probable cause to believe that the automobile holds contraband or evidence of a crime. *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991); *State v. Gallegos*, 120 Idaho 894, 898, 821 P.2d 949, 953 (1991); *State v. Ramirez*, 121 Idaho 319, 323, 824 P.2d 894, 898 (Ct.App. 1991). In the present case, Officer Field searched Albaugh's truck only after Albaugh had admitted that within the truck he was carrying a concealed weapon, a misdemeanor

offense under I.C. § 18–3302, and a controlled substance, a felony under I.C. § 37–2732. Officer Field thus possessed the requisite probable cause to search the truck under the automobile exception to the warrant requirement, and Albaugh's consent was unnecessary. We therefore do not further consider Albaugh's argument regarding the scope of his consent.

Albaugh has not shown error in the district court's determination that the detention of Albaugh and the search of his vehicle were lawful.

### B. Alleged *Miranda* Violation

■ We next consider Albaugh's contention that he was subjected to a custodial interrogation without a *Miranda* warning when Officer Field began questioning him.

■ In *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the United States Supreme Court held that, to effectuate the Fifth Amendment privilege against compulsory self-incrimination, police must inform individuals of their right to remain silent and their right to counsel before undertaking a custodial interrogation. For application of the *Miranda* rule, persons are "in custody" when they have been arrested or when their freedom of action "is curtailed to a 'degree associated with formal arrest.' " *Berkemer v. McCarty*, 468 U.S. 420, 440, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334–35 (1984) (quoting *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275, 1279 (1983)); *State v. Medrano*, 123 Idaho 114, 117, 844 P.2d 1364, 1367 (Ct.App.1992). In determining whether a suspect is in custody, the relevant inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442, 104 S.Ct. at 3151, 82 L.Ed.2d at 336. *See also State v. Myers*, 118 Idaho 608, 611, 798 P.2d 453, 456 (Ct. App.1990). The totality of the circumstances must be examined, which may include the location of the interrogation, the conduct of the officers, the nature and manner of the questioning, the time of the interrogation, and other persons present. *Medrano*, at 117–18, 844 P.2d at 1367–68.

**592**

It is well established that roadside questioning of a motorist pursuant to a routine traffic stop does not generally amount to a "custodial interrogation" for *Miranda* purposes. *Berkemer, supra; State v. Pilik,* 129 Idaho 50, 921 P.2d 750 (Ct.App.1996); *Myers, supra.* A compulsory stop at a truck weigh station is somewhat more intrusive than a routine traffic stop in that it entails weighing of the truck, examination by law enforcement officers of the driver's logbook and other records, and other inquiries relevant to enforcement of highway safety laws and commercial vehicle regulation. However, these are routine investigations that are expected by commercial truck drivers as an ordinary incident of their operations. Such routine weigh station stops are temporary detentions, not custodial in nature, and the circumstances presented here did not alter that status. This stop occurred during daytime at the side of a highway. At the check point, Albaugh was met by only two officers, one a port of entry officer and the other a state policeman. Their guns were not drawn, and their questioning of Albaugh was of brief duration. Prior to Albaugh's admission to the possession of methamphetamine, the officers said nothing that could be viewed as coercive or indicative that Albaugh would not be allowed to leave at the conclusion of the officers' inquiries. We find no facts here that would have led a reasonable person in Albaugh's situation to believe that he was in custody at the time he was questioned by Officer Field. Therefore, it was unnecessary for Officer Field to give *Miranda* warnings before interrogating Albaugh, and Albaugh's motion to suppress on this ground was appropriately denied.

## CONCLUSION

The circumstances surrounding the weigh station stop, Albaugh's interrogation, and the search of his truck, do not demonstrate either a *Miranda* violation or an infringement of Albaugh's Fourth Amendment rights. Accordingly, the district court's order denying Albaugh's motion to suppress evidence is affirmed.

Chief Judge PERRY, and Judge SCHWARTZMAN, concur.