# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 40139

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 659 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: September 5, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| ROBERT LEROY HUCK, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Eric J. Wildman, District Judge. Hon. Richard D. Greenwood District Judge.

Judgments of conviction for possession of a controlled substance and for possession of drug paraphernalia, <u>affirmed</u>; order denying motion to suppress, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

WALTERS, Judge Pro Tem

Robert Leroy Huck appeals from his judgments of conviction for possession of a controlled substance, Idaho Code § 37-2732(c), and for possession of drug paraphernalia, I.C. § 37-2734A. He contends that the district court erred by denying his motion to suppress evidence. We affirm.

## I.

## BACKGROUND

The following facts are taken from the district court's findings of fact in the decision denying the motion to suppress. On June 18, 2011, Boise City Police Officers Montoya, Schiffler, Borgeau, and Phillips were working together as a "direct patrol team." Shortly before 7:30 p.m., Officer Phillips received information regarding a drug transaction occurring in a

1

supermarket parking lot at the corner of Overland Road and Vista Avenue in Boise. Officer Phillips dispatched the other officers who were each in separate patrol vehicles to respond to the scene. He informed the officers that Huck may be in possession of narcotics and provided a description of Huck and the vehicle he was driving. In responding to the scene, Officer Montoya observed Huck driving westbound on Overland Road and proceeded to follow the vehicle from a distance of about two car lengths. The other officers followed behind at various car lengths.

At approximately 7:30 p.m., Officer Montoya witnessed Huck's vehicle make a northbound turn onto Roosevelt Street. Montoya proceeded to initiate a traffic stop based on his observation that Huck failed to utilize his signal for the period of time or distance as required by I.C. § 49-808(2), prior to making the turn. Officers Schiffler and Borgeau arrived at the scene within a few seconds of the stop. Officer Montoya obtained Huck's driver's license and informed him of the reason for the traffic stop, explaining that when Huck turned onto Roosevelt Street he did not engage his turn signal until he was already into the turn. After returning to his vehicle and running Huck's information through dispatch, Montoya asked Huck for permission to search his vehicle. Huck refused the request, stating that it was not his vehicle. Officer Montoya then asked Officer Schiffler to write the traffic citation while Montoya went to retrieve his K-9 drug dog.

After returning with the drug dog, Officer Montoya advised Huck that he was going to use the dog to conduct a sniff around the exterior of the vehicle and directed Huck to exit the vehicle and to stand next to Officer Borgeau. Officer Borgeau also directed Huck to exit the vehicle and directed him not to put his hands in his pockets. Officer Borgeau testified that Huck appeared nervous, was hesitant to exit the vehicle, and prior to exiting rolled up the window and locked the door. Officer Borgeau ordered Huck to place the keys on the top of the car, explaining that it was a "safety issue." Huck reluctantly complied, but questioned the request arguing that it was not his car. Officer Borgeau testified that after Huck exited the vehicle he turned away from him and towards the car, dropping his hands down towards the front of his waistband area and out of sight. This sudden movement immediately led Officer Borgeau to suspect Huck was either attempting to conceal evidence or retrieve a weapon. Officer Borgeau grabbed Huck by the forearm and led Huck to the rear of the vehicle for the purpose of conducting a pat-down search. Prior to conducting the pat-down, Officer Borgeau asked Huck if he had anything on his person that he (Officer Borgeau) needed to know about, including

weapons, needles or anything that would hurt him. Huck responded he had no weapons or needles. When asked if he had "something else" on his person, Huck admitted to having methamphetamine in his pocket.

Meanwhile, the drug dog sniff of the vehicle's exterior resulted in an alert near the driver-side door. (According to the district court, the evidence was unclear whether the drug dog alerted first or whether Huck admitted to possessing methamphetamine first.) Officer Montoya proceeded to deploy the dog to conduct a sniff of the interior of the vehicle, resulting in the dog alerting to a black bag sitting on the passenger seat. A subsequent search of the bag by Montoya revealed seven syringes and a digital scale. Huck was subsequently placed under arrest. At no time prior to the arrest was Huck read his *Miranda* rights.[1] The period of time from the traffic stop until the time of the arrest was approximately ten minutes.

Huck was charged with possession of a controlled substance, methamphetamine, I.C. § 37-2732(c), a felony, and with possession of drug paraphernalia, I.C. § 37-2734A, a misdemeanor. Huck filed a motion to suppress evidence, asserting that the state lacked probable cause to conduct a traffic stop and that there was no reasonable, articulable suspicion to remove Huck from his vehicle. He further asserted that his detention was unduly prolonged; that the officers failed to give him *Miranda* warnings prior to questioning him at the scene; and that no evidence existed to show the drug dog's qualification. After a hearing, the district court denied Huck's motion. Huck entered conditional pleas of guilty to the charges, reserving his right to appeal the denial of the suppression motion. The district court entered a judgment of conviction,[2] and imposed a unified seven-year sentence with a three-year minimum period of confinement on the felony charge. The court imposed a jail term of 180 days on the misdemeanor charge and gave Huck credit for 180 days for incarceration served prior to the sentencing hearing. The district court entered an order retaining jurisdiction to allow consideration of release on probation pursuant to I.C. § 19-2601(4). Huck has appealed, asserting the district court erred by denying his motion to suppress.

---

[1]     *Miranda v. Arizona*, 384 U.S. 486 (1966).

[2]     The judgments of conviction were entered and the sentences were imposed by District Judge Richard D. Greenwood. The decision and order denying Huck's suppression motion was rendered by District Judge Eric J. Wildman.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated.  The appellate court accepts the trial court's findings of fact that are supported by substantial evidence and exercises free review of the trial court's determination as to whether constitutional standards have been satisfied in light of the facts found.  *State v. Willoughby*, 147 Idaho 482, 485-86, 211 P.3d 91, 94-95 (2009); *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996).  Decisions regarding the credibility of witnesses and the weight to be given to evidence, together with the power to resolve factual conflicts and to draw factual inferences from the evidence, are matters vested in the trial court to be determined within the court's discretion.  *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## DISCUSSION

The issues on appeal concern the rulings of the district court on Huck's motion to suppress.  Huck contends the district court erred in concluding that there was a valid basis for Officer Montoya of the Boise City Police Department to effect a traffic stop of Huck and the vehicle he was driving.  He further asserts that the district court erred in determining that there was a reasonable, articulable suspicion on the officers' part to remove Huck from the vehicle.  Next, he contends that the district court erred in determining that the officers did not unreasonably prolong their investigation at the scene of the traffic stop.   He also argues that the district court erred in holding that Huck's *Miranda* rights were not violated.  Finally, he claims that the district court erred in concluding that Huck lacked standing to contest the search of the automobile he was driving.  These issues will be addressed in turn.[3]

---

[3]    One of the grounds upon which Huck challenged the search of his vehicle was a claim that the drug dog was not qualified.  This argument was based on the fact that no evidence had been disclosed concerning the training or experience of the dog.  Subsequently, evidence was presented at the hearing on the suppression motion relative to the dog's training, from which the district court found that the dog was sufficiently trained to provide probable cause for the search of the vehicle's interior.  In his brief on appeal, Huck acknowledges that the dog's qualifications were addressed at the hearing on the suppression motion, and he does not pursue the question of the dog's qualification as an issue on appeal.

**A.  The Traffic Stop**

Huck contends that there was not a valid basis for Officer Montoya to effect a traffic stop.  The district court found otherwise.

The Fourth Amendment to the United States Constitution and Article 1, § 17, of the Idaho Constitution prohibit unreasonable searches and seizures.  Searches and seizures without a valid warrant are presumed unreasonable and violate both constitutional provisions.  *State v. Nunez*, 138 Idaho 636, 640, 67 P.3d 831, 835 (2003).  The purpose of these constitutional rights is to "impose a standard of reasonableness upon the exercise of discretion by government agents and thereby safeguard the individual's privacy and security against arbitrary invasions."  *State v. Maddox*, 137 Idaho 821, 824, 54 P.3d 464, 467 (Ct. App. 2002).  A vehicle stop constitutes a seizure of its occupants and is therefore subject to constitutional limits.  *State v. Cerino*, 141 Idaho 736, 737, 117 P.3d 876, 878 (Ct. App. 2005); *State v. Roark*, 140 Idaho 868, 870, 103 P.3d 481, 483 (Ct. App. 2004).  While routine traffic stops by officers implicate the constitutional prohibitions against unreasonable searches and seizures, the reasonableness of a traffic stop is analyzed under *Terry v. Ohio*, 392 U.S. 1 (1968), inasmuch as a traffic stop is more analogous to an investigative detention than a custodial arrest because such a stop is normally limited in scope and of short duration.  *Delaware v. Prouse*, 440 U.S. 648, 653-54 (1979); *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003).  Applying the *Terry* standard, "an investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity."  *Sheldon*, 139 Idaho at 983, 88 P.3d at 1223, (citing *Terry*, 392 U.S. at 21); *see also United States v. Cortez*, 449 U.S. 411, 417 (1981).  The reasonableness of the officer's suspicion is evaluated based upon the totality of the circumstances at the time of the seizure.  *State v. Evans*, 134 Idaho 560, 563, 6 P.3d 416, 419 (Ct. App. 2000); *State v. Flowers*, 131 Idaho 205, 208, 953 P.2d 645, 648 (Ct. App. 1998).  When an officer observes a traffic violation, initiating a traffic stop is reasonable.  *Whren v. United States*, 517 U.S. 806, 810 (1996).

Here, from the evidence presented at the suppression hearing, the district court found that Officer Montoya initiated a traffic stop based on his observation that Huck did not activate his turn signal until he had commenced the turn from Overland Road to Roosevelt Street.  In his brief on appeal, Huck concedes that I.C. § 49-808(2) requires a signal of intention to turn for not less than the last one hundred feet before turning.  Although Huck testified at the suppression

5

hearing that he had engaged his signal about two to three seconds before commencing the turn, Officer Montoya's testimony and an audiotape of the officer's initial contact with Huck was to the contrary--that the signal was not activated until Huck had already begun to turn his vehicle onto Roosevelt Street. The district court found that there was conflicting evidence concerning when Huck activated his signal. The district court found Officer Montoya to be more credible because his testimony was corroborated by the audio of the stop and because Huck's recollection lacked the same degree of certainty. The district court noted that even if Huck was correct and he activated his turn signal as he claimed, the minimal distance and time involved was well within the margin of reasonableness for purposes of initiating the stop for a suspected traffic violation. The district court concluded that the evidence would give Officer Montoya reasonable suspicion to stop the vehicle to investigate further.

Huck argues that the district court should have accepted his version of the turn signal circumstance over that given by Officer Montoya and as corroborated by the audio recording of the initiation of the traffic stop. However, the decision regarding the credibility of witnesses and the power to resolve conflicts in the evidence lies solely in the province of the trier of fact. *Valdez-Molina*, 127 Idaho at 106, 897 P.2d at 997. There is sufficient evidence to support the district court's findings and Huck does not contend otherwise. Considering the authority of the trial court to determine credibility, the weight of the evidence, and to resolve conflicts in the testimony and evidence, we uphold the district court's determination that the traffic stop was based upon reasonable suspicion and was lawful.

**B.      Removal From the Vehicle**

Huck next argues that his Fourth Amendment rights were violated when he was ordered to exit his vehicle. His position is predicated upon the claim that the traffic stop was invalid. It is well settled that once an officer has stopped a motor vehicle for a traffic violation, an order by the officer for an occupant to exit the vehicle does not offend the Fourth Amendment. *State v. Irwin*, 143 Idaho 102, 104, 137 P.3d 1024, 1026 (Ct. App. 2006); *see also Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977). We have concluded that the district court correctly determined that the traffic stop was lawful. Accordingly, Huck's Fourth Amendment rights were not violated when the officers ordered him to exit his vehicle.

6

## C.     Duration of Detention

Huck next argues the district erred by failing to conclude that his detention was unreasonably prolonged by the time the drug dog alerted to the vehicle.  His argument focuses on the activities occurring from the time of the traffic stop until his arrest, which the district court determined lasted approximately ten minutes.

An investigative detention must not only be justified at its inception, but must also be conducted in a manner that is reasonably related in scope and duration to the circumstances which justified the interference in the first place.  *Florida v. Royer*, 460 U.S. 491, 499-500 (1983); *State v. Roe*, 140 Idaho 176, 181, 90 P.3d 926, 931 (Ct. App. 2004).  "There is no rigid time limit for determining when a detention has lasted longer than necessary; rather, a court must consider the scope of the detention and the law enforcement purposes to be served, as well as the duration of the stop."  *State v. Grantham*, 146 Idaho 490, 496, 198 P.3d 128, 134 (Ct. App. 2008).

The district court held that Huck's detention was not prolonged by Officer Montoya presenting his drug dog to conduct an open air sniff while another officer prepared a citation. The district court noted that the dog was with Officer Montoya when he initiated the traffic stop and thus, there was no delay in the duration of the stop to wait for the dog to arrive.  The district court also observed that the sniff took place contemporaneously with the other officer writing the traffic citation, referencing *State v. Parkinson*, 135 Idaho 357, 362-63, 17 P.3d 301, 307-08 (Ct. App. 2000) (holding that it is permissible for one officer to conduct a drug dog sniff while another officer is busy checking with dispatch on the driver's status and writing out a traffic citation).  The court concluded that the stop did not last longer than was necessary to effectuate the purpose of the stop and therefore did not unconstitutionally expand the duration of the traffic stop or violate Huck's Fourth Amendment rights.

Huck asserts that because the officers ultimately did not issue him a citation and because the officers took time to interrogate him while Officer Montoya was in the process of getting his dog from the patrol car, the duration of the detention was unduly extended.  We are not persuaded.

From the testimony presented at the suppression hearing, it appears that Huck was not issued a citation because he "stated he wanted to help himself out with working as a confidential informant."  It also appears the process of questioning Huck by the officers developed after

learning of Huck's criminal history, his involvement with drugs, and to allay concerns over whether Huck was in possession of any weapon. Routine traffic stops may turn up suspicious circumstances which could justify an officer asking questions unrelated to the stop. *State v. Myers*, 118 Idaho 608, 613, 798 P.2d 453, 458 (Ct. App. 1990). Asking Huck limited questions about narcotics and weapons, after learning of his history of narcotics and weapons violations, would constitute part of a reasonable investigation, even if it was not the purpose of the initial stop. *See Grantham*, 146 Idaho at 496, 198 P.3d at 134; *Parkinson*, 135 Idaho at 362-62, 17 P.3d at 306-07. Huck has failed to show error in the district court's determination that his detention was reasonable.

**D.**     ***Miranda* Issue**

After Huck was ordered to remove himself from his vehicle, he was frisked and questioned by the officers during the detention. Huck was not given any *Miranda* warnings. The responses he gave to the officers led to disclosure of methamphetamine in his possession. Huck argues that the district court erred by concluding that he was not in custody for purposes of *Miranda*.

In discussing the *Miranda* issue, the district court quoted from the audio recording of the traffic stop revealing the following exchange between Officer Borgeau and Huck:

| | |
|---|---|
| BORGEAU: | This is for safety. I am going to check you for weapons. Is there anything on you I need to know about? |
| HUCK: | No. |
| BORGEAU: | Okay. Leave your hands right there; if you pull them away you are going to the ground. Do you understand? |
| HUCK: | They are right there. |
| BORGEAU: | Do you have anything on you I want to know about? |
| HUCK: | Um. |
| BORGEAU: | Do you have any weapons, any needles, anything that is going to hurt me? |
| HUCK: | I have no weapons. No. I have no needles. |
| BORGEAU: | Okay. Do you have something else? |
| HUCK: | Um. Yeah. |
| BORGEAU: | You seem to be hesitating. What do you have? |
| HUCK: | I have a little methamphetamine. |
| BORGEAU: | Okay. Where is this methamphetamine? |
| HUCK: | In my pocket. |

From this exchange, the district court found that the amount of questions asked to be modest and to be consistent with the stop-and-frisk procedure enunciated in *Terry*, for officer's safety. The

8

district court also determined that Huck was not "in custody" when he admitted to having methamphetamine on his person because he was not deprived of his freedom of action in any significant way.

The defendant bears the burden of establishing that he was in custody for purposes of *Miranda*. *State v. James*, 148 Idaho 574, 577, 225 P.3d 1169, 1172 (2010). The test for determining whether an individual is in custody for the purposes of *Miranda* is whether, objectively considering the totality of the circumstances surrounding an interrogation, there was a "formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (internal quotations omitted); *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). Relevant factors in making this determination include the time, location, public visibility of the interrogation, the conduct of the officers, the nature and manner of the questioning, the extent to which officers confront the suspect with evidence of his guilt, and the presence of other persons. *State v. Albaugh*, 133 Idaho 587, 591, 990 P.2d 753, 757 (Ct. App. 1999); *State v. Medrano*, 123 Idaho 114, 118, 844 P.2d 1364, 1368 (Ct. App. 1992). Because the "in custody" test for *Miranda* requires a restraint on freedom associated with formal arrest, "the temporary and relatively nonthreatening detention involved in a traffic stop . . . does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)).

The district court correctly applied the relevant legal standards to the facts before it in concluding that Huck was not in custody prior to his arrest on the drug charges. The traffic stop lasted roughly ten minutes which the officers testified was a normal duration for a traffic stop. The district court found that the traffic stop occurred in a public area along relatively busy streets. The court decided that the number of questions asked by the investigating officer was modest, and the questions were consistent with a *Terry* stop. The district court found that Huck was not handcuffed, nor was he informed that his detention would not be temporary.

Huck posits that he was in custody because he had been ordered out of his vehicle, he was frisked despite denying that he had any weapons, and there were at least three officers at the scene of his arrest. These factors, while relevant to the inquiry, do not establish custody for the purposes of *Miranda.* There is no question that Huck was seized when he was subjected to a traffic stop and frisked. The other indicia, however, are consistent with an investigatory or traffic stop, and the "detention involved in a traffic stop . . . does not constitute *Miranda*

9

custody." *Shatzer*, 559 U.S. at 113; *see also State v. Young*, 136 Idaho 711, 720, 39 P.3d 651, 660 (Ct. App. 2002) (where a team of officers did not draw their weapons, use force or handcuffs, the suspect was not in custody for purposes of *Miranda*; even though "the officers controlled [his] movements to a certain degree, they did not control his movements to degree associated with formal arrest"); *State v. Ybarra*, 102 Idaho 573, 576, n.5, 634 P.2d 435, 438, n.5 (1981) (bank robbery suspect removed from vehicle at gunpoint, while resulting in some degree of intimidation, was not "deprived of his freedom of action in a significant was so that *Miranda* warnings were required" prior to questioning).

Here, the facts found by the district court in relation to Huck's suppression motion clearly establish that Huck was detained. They do not, however, establish that Huck was deprived of his freedom of action in a significant way so as to implicate *Miranda*. Although ordering Huck out of his vehicle and frisking him for weapons had the effect of restricting Huck's movement to a certain degree, that restriction was not sufficient for a reasonable person in Huck's position to believe he was in police custody to the degree associated with a formal arrest. Huck has failed to meet his burden of establishing that he was in custody for purposes of *Miranda*. The district court's decision on this point will be affirmed.

### E.      Standing Issue

In response to Huck's motion to suppress evidence seized from the vehicle, the state challenged Huck's standing to make such a motion because Huck had informed the police that he was not the owner of the vehicle, but was driving it with the owner's permission, and had no authority to consent to a search of it. The district court agreed with the state's position and held that Huck failed to show that he had a legitimate expectation of privacy in the vehicle search. However, the district court held that even if Huck possessed the requisite standing to challenge the lawfulness of the search, the search of the vehicle was nonetheless lawful because the search was based on a drug dog sniff and there was no unreasonable delay in the duration of the encounter. The district court recognized that an officer's investigation at the scene of a stopped automobile can ripen into probable cause as soon as a drug dog alerts on the exterior of the vehicle, justifying a search of the interior of the vehicle without the necessity of obtaining a warrant. *Parkinson*, 135 Idaho at 362, 17 P.3d 307.

On appeal, Huck contends the district court erred in determining Huck lacked standing to challenge the search of his vehicle. We hold that even if the district court incorrectly determined

that Huck lacked standing, the error is harmless because the district court correctly held that the search was valid.

## IV.

## CONCLUSION

The district court did not err in denying Huck's motion to suppress evidence. The judgments of conviction for possession of controlled substances and paraphernalia are affirmed.

Chief Judge GUTIERREZ and Judge LANSING **CONCUR.**